J. C. DUCKER AND WIFE, MARCELLA DUCKER, v. W. R. WHIT-
SON, Administrator of W. R. Murray.

*Action on Sealed Note—Consideration—Undue Influence—
Mental Capacity—Issues.*

1. In an action against the administrator of a deceased father who had executed a note to his daughter, which, together with other notes to his wife and other children and a contemporaneous writing stating the notes were to be paid out of his estate and not to be reckoned as advancements, he had left with C., an attorney, the administrator defended, alleging lack of consideration, undue influence by a son of his intestate, mental incapacity, non-delivery of note, and on the ground that the note and accompanying paper constituted an executory contract, not binding on the deceased, in favor of the plaintiff, a distributee; issues as to mental capacity, undue influence and delivery were sufficient, and fairly presented the whole matter in controversy.

2. The attorney, C., having testified as to the execution of the note sued on and the accompanying paper, it was proper, as bearing on the question of delivery, to ask C. what deceased had told him to do with the notes, whether to hold them subject to his order, or to deliver to the payees.

3. When defendant asked a witness, whom he had introduced, to show incapacity of deceased, whether he (the witness) had not suggested the appointment of a guardian for the deceased: *Held*, the question was *leading*, and the Court did not err in disallowing it.

4. The testimony of a sister of plaintiff, to whom a note similar to that sued on was executed, to the effect that before and after the date of the note her father "was very bright," was not objectionable under section 590 of *The Code*, in relation to transactions with a decedent.

5. Where a note under seal was executed by a father and delivered to his daughter, or to another for her, and in an accompanying and contemporaneous paper the fact appeared that the payee was his daughter and that the note was intended to be paid out of his estate after his death, in addition to her distributive share: *Held*, that such fact was not sufficient to rebut the consideration imported by the seal, and even if the note had been a voluntary bond and intended as a *gift* the seal imported a consideration and rendered it enforceable.

CIVIL ACTION, tried before *Bynum, J.,* and a jury, at August Term, 1892, of BUNCOMBE Superior Court.

It was brought by the payee of a note (the *feme* plaintiff) and her husband against the defendant administrator of W. R. Murray, deceased, father of *feme* plaintiff. The note sued on was as follows:

"One day after date I promise to pay to the order of Marcella Murray three hundred and thirty-three $\frac{33}{100}$ dollars, value received, this September 10, 1889.

"(Signed)     W. R. MURRAY. (Seal.)
" Witness—M. E. CARTER."

The defendant denied the execution of the note by his intestate, and for second cause of defence alleged:

1. That at the time of the pretended execution of the said alleged note to the plaintiff by the defendant's intestate, the said intestate also executed a paper-writing, which was to be taken as a part of the transaction, concerning the execution of said alleged note and others therein mentioned, and delivered said paper-writing, with said note and the others mentioned, to M. E. Carter. The said paper-writing is as follows:

"MR. M. E. CARTER:—The note of four hundred dollars this day executed by me to my wife, Eliza, payable one day after date, and three notes of three hundred and thirty-three $\frac{33}{100}$ dollars each, executed by me to my son, John C. Murray, and my two daughters, Terrissa and Marcella Murray, respectively, payable one day after date, and all left with you, are intended to be paid out of my estate, in addition to their shares respectively as my wife and children, and are not to be considered as advancements.

"This September 10, 1889.

"(Signed)     W. R. MURRAY."

2. That the said notes described in the said paper-writing, and bearing even date with the said paper-writing, were executed, if at all, without any valid consideration in law and, as he is advised and believes, cannot be enforced in this Court, the same being, as he is also informed and believes, an executory contract and not binding in law against the estate of the defendant's intestate, the plaintiff herein being his daughter and one of his distributees.

3. That at the time of the execution of the said notes and paper-writing the intestate was weak in body and mind and did not have sufficient mental capacity to make a contract. That owing to his mental incapacity said intestate did not know the nature of his property, its value, nor its relations, nor to whom he was attempting to dispose of his property.

4. That prior to the time of the execution of the said notes one John C. Murray, who is the son of the said intestate and the brother of the plaintiff herein, had been the confidential agent and manager for the said intestate, W. R. Murray, and had obtained an undue influence over the said intestate. That the said John C. Murray induced the said intestate to leave his home and come to Asheville, where he executed said notes and the said paper-writing. That from information and belief the defendant alleges that the said John C. Murray employed the attorney who drew the papers and in whose custody and control they were left. That these notes and paper-writing were signed by the said intestate at a time when he was under the undue and controlling influence of the said John C. Murray, who unduly influenced him to sign the same.

5. That from information and belief it was the purpose of the said John C. Murray, in inducing his said father, the defendant's intestate, to execute said notes and paper-writing, to obtain control of the sum of fourteen hundred

dollars ($1,400) then deposited to the credit of the said intestate in the National Bank of Asheville, and to deprive the other distributees of their share of the estate at the death of said W. R. Murray. That at the time of the execution of the said notes and paper-writing the plaintiff was quite old and feeble and not expected to live but a short time. That since the death of said intestate the widow (one of the payees) has had dower assigned and her year's allowance. That this sum of fourteen hundred dollars ($1,400) was and did constitute the principal portion of the personal estate of the said intestate, and that if those notes be enforced the other distributees, there being several of them, will be deprived of their share which may have come to the hands of the defendant, and he is advised and believes that he holds the personal property of the intestate, including the fourteen hundred dollars ($1,400), in trust for all the distributees after payment of debts and costs of administration.

6. That from information and belief, none of the payees named in said notes, except the said John C. Murray, were present at the execution of the same. That they knew nothing of the same, and had no desire to have more than their legal share of intestate's property, and from information and belief the defendant avers that the said John C. Murray intended to become the beneficiary of these notes, if only to use the money to his personal profit.

7. That no money was delivered to the payees of said notes prior to the death of the said intestate, the $1,400 having come to the possession of the defendant as administrator. The four notes described in said paper-writing in the aggregate make the sum of $1,400, corresponding to the amount which the said intestate had in bank.

The plaintiff tendered the following issues, which were submitted by the Court and responded to as follows:

1. Did W. R. Murray, at the time he executed the note sued on, have capacity to understand the nature of the act he was doing, the nature and value of his property, and for whose benefit he was executing it? Answer. Yes.

2. Did the said Murray execute said note in consequence of undue influence exerted over him by John Murray? A. No.

3. Was the note delivered to the plaintiff or his agent for him? A. Yes.

The defendant tendered the following issues:

1. Was the intestate, at the time of the execution of the paper sued on, of such a state of mind as not to know the nature of his property, its value, and to whom and how he was disposing of the same?

2. Was the said Murray at the time under the undue influence of John Murray, one of his sons?

3. Is the defendant, as administrator, indebted to plaintiff? if so, in what sum?

The Court submitted the issues tendered by the plaintiffs, and refused to submit those tendered by the defendant, and the defendant excepted and appealed from the judgment rendered.

The testimony on the trial sent up in the case is very voluminous, but the exceptions are sufficiently stated in the opinion.

*Mr. H. B. Carter*, for plaintiffs.

*Messrs. Charles A. Moore* and *W. H. Malone*, for defendant (appellant).

MACRAE, J.: The first exception is to the refusal of his Honor to submit the issues tendered by defendant and the submission of those tendered by the plaintiffs.

There is no substantial difference in the first and second issues tendered on each side. While the answer denies the execution of the note sued on, the real defence is that set up in the second defence which, admitting the manual signing and sealing of the note or bond, avers the execution at the same time of a separate paper which constitutes part of the transaction; the want of consideration, the fact that the two papers constitute an executory contract not binding upon defendant's intestate because the plaintiff is one of the distributees of intestate; that there was no delivery of said papers to plaintiff; that their execution was obtained by reason of undue influence exercised upon intestate by one John C. Murray, and finally the want of mental capacity on the part of plaintiff to make a contract at the time of the execution aforesaid.

The issues submitted, with the instructions thereon, seem to have presented fairly the matters in controversy—

First. Did the intestate at the time of the execution of the note sued on have sufficient mental capacity to make a contract?

Second. Did he execute it in consequence of undue influence exerted over him by John Murray? and

Third. Was the note delivered?

M. E. Carter, a witness for plaintiffs, having testified to the execution of the note sued on as well as several other notes and of a contemporaneous paper, the plaintiff proposed to ask him what intestate told him to do with the notes, and to this the defendant objected and excepted.

An examination of the paper will show that this testimony was not offered to contradict or explain it, but upon the question of the purpose of the delivery of the note to Carter. Delivery or non-delivery was a question of fact to be proven *aliunde,* in this instance, and it was competent to ask the question for the purpose of show-

ing whether it was left with Mr. Carter to be held by him subject to the order of the maker, or to be delivered to the payee.

Joseph Garren was offered as a witness by defendant upon the question of the condition of intestate's mind and his liability to be influenced by one in whom he had confidence, and after the witness had testified in chief and before he was turned over, the defendant's counsel proposed to ask him if he (witness) did not at the time suggest that intestate should have a guardian appointed for him. To this plaintiff objected; the objection was sustained, and defendant excepted. The question was a leading one. It was in the discretion of his Honor to have permitted it, and the refusal to do so is not a matter which can be assigned for error. 1 Greenleaf on Evidence (14th Edition), sec. 435, and note.

After much testimony offered on both sides as to the mental capacity of intestate, Clarissa Murray was offered as a witness for plaintiff, and the plaintiff proposed to ask her what, in her opinion, was the condition of her father's (intestate's) mind when he left home, based upon her knowledge and observation of him at the time. Defendant objected to the question, because the witness had not stated any conversation or conduct of his or anything which had passed between them, or any other fact upon which she could base an opinion. This objection was overruled, and defendant excepted. The witness testified that intestate's mind was bright and clear; that she had known and lived with him all her life; that she had seen him make contracts and manage his affairs, and that she based her knowledge on this; that she saw him when he came back after the notes were executed, and his mind was bright; that he was postmaster and a Justice of the Peace, and attended to the business; and witness testified to her opinion that he had

mental capacity sufficient to make a contract. To all of
the foregoing the defendant excepted. She further testified
that her brother John gave her one of the notes and she
kept it a day or two and gave it back to him.

Although it is not clearly stated, we may take it that
this witness is a daughter of intestate, and that she is the
same as the *Terrissa* who was the person mentioned in M. E.
Carter's testimony, to whom one of the notes was made pay-
able. If the objection was under section 590 of *The Code,*
because she was interested in the event of this action, we
fail to see anything in her testimony in relation to a per-
sonal transaction or communication with intestate. Indeed,
such testimony seems to have been carefully avoided. It
may be, if she had been asked as to anything which had
passed between herself and the intestate, the objection
would have been promptly made under section 590. She
testified to the grounds of her opinion, upon her knowledge
of his mental condition from his other acts than with her-
self, and that upon his return from making the notes his
mind was bright, thus fixing the time as shortly before and
directly after the act in question.

His Honor, in substance, charged the jury, upon the first
issue, that the burden was on the plaintiff to prove the
execution of the note, and that when she had done this she
had made out a *prima facie* case. He arrayed the conten-
tions of the parties and the testimony offered in support
thereof on this issue, and left it to the jury to determine
whether the plaintiff had satisfied them by a preponder-
ance of evidence that the note was signed and sealed by
intestate, that he delivered it to Carter for the plaintiff, and
that Carter accepted it as agent for plaintiff, and if they
were so satisfied as to the mental capacity of intestate, the
law presumes he had it and the burden is on the defendant
to disprove it by a preponderance of evidence; that mere

weakness of mind is not sufficient to invalidate a contract; that if he knew what he was doing, to whom and for whose benefit it was made, that it was for the payment of money, and the amount of money he was about to dispose of, he had sufficient mental capacity, and this instruction was reiterated in substance. He further instructed the jury, upon this issue, that if defendant's intestate had shown mental incapacity prior to the execution of the note, the burden was upon the plaintiff to show that it was executed at a time when he had the capacity to contract. This was the substance of his Honor's charge on the first issue, and we think it covered all of the prayers to which the defendant was entitled.

The defendant contends that there was no testimony upon which his Honor could have left it to the jury to determine whether the note was left with Carter as the agent of plaintiff and to deliver to her. Having admitted the testimony of Carter as to what intestate told him to do with the notes, it follows that his testimony was to be considered upon the question of delivery and whether the intestate left it with Carter to hand over to the plaintiff, the payee. And we do not think that Carter's testimony would warrant the instruction asked, that if John Murray took the note with the understanding between him and Carter that it was to be handed to plaintiff and by her handed back to Carter, this would be no delivery. The law is plain as to the delivery of a deed or bond by the maker to a third party for the benefit of the grantee or obligee. Shortly stated, " the delivery of a deed is the parting with it under such circumstances as prevent its recall." *Kirk* v. *Turner*, 1 Dev. Eq., 14. "The delivery to a stranger, to become a delivery to the party, must be a delivery for the use or benefit of the party, and not rejected, but accepted by the party." *Whichard* v. *Jordan,* 6 Jones, 54; *Houston* v. *Phillips*, 5 Jones, 302.

See also, 2 Am. & Eng. Enc. of Law, 458.   The difficulty arises in the application to particular cases.

The fourth prayer for instructions seems to have been given almost in its very words.   It is too late, now, to cite authorities that it is not necessary for the Judge to give the instructions as prayed for, *verbatim.*   We conclude that there was no error in the instructions given, or in the refusal to give those asked for but not given.

We come now to the last exception, upon the law of the case, whether under all the testimony and findings of the jury the note, as explained by the contemporaneous paper, was enforceable at law.

The note was under seal, importing a consideration. There is nothing in the contemporaneous paper to show want of consideration :

"MR. M. E. CARTER:—The note of $400 this day executed by me to my wife Eliza, payable one day after date, and the three notes of $333.33 each, executed by me to my son, John C. Murray, and my two daughters, Terrissa and Marcella Murray, respectively, payable one day after date, and all left with you, are intended to be paid out of my estate in addition to their shares respectively as my wife and children, and are not to be considered as advancements.

"This September 10, 1889.

                    "W. R. MURRAY, (Seal)."

We cannot say that the fact appearing in this paper, that the payee was his daughter, was sufficient to rebut the consideration imported by the seal, or that by a fair construction of this paper it appears that there was no consideration for the note but that of love and affection, which defendant contends is not sufficient to support a promise. But if we treat the note as a voluntary bond, intended as a

gift, the seal imports a consideration, and there is respectable authority to the effect that it can be enforced.   8 Am. & Eng. Enc. of Law, 1321, and cases cited.

Upon the whole we see no error, and the judgment must be                                                                                   Affirmed.