STATE OF NORTH CAROLINA v. MICHAEL LEOPOLD PEPLINSKI

No. 84

(Filed 17 June 1976)

**1. Homicide § 4— felony-murder — no necessity that defendant inflict fatal wound**

It is not necessary to support a conviction of felony-murder that defendant actually inflicted the fatal shot; rather, when several persons aid and abet each other in an attempt to perpetrate a robbery, and while so engaged, one of them fatally wounds the victim, all being present, each is guilty of murder in the first degree.

**2. Homicide § 21— felony-murder — attempted robbery — sufficiency of evidence**

Evidence in this felony-murder prosecution was sufficient to raise reasonable inferences which would support jury conclusions that defendant shared in the criminal intent to rob the victim and that he, by overt acts, took part in the attempted robbery of the victim where such evidence tended to show that defendant gained entrance to the victim's home by making false representations, he attempted to incapacitate the victim's wife by the use of tear gas at the time one Larry Clark was engaged in an attempt to rob her husband, defendant assisted Clark in his attempt to rob the victim by spraying him with tear gas, before fleeing the premises defendant twice asked Clark if he had obtained the victim's pocketbook, and defendant concealed himself in a nearby wooded area until he was discovered and taken into custody by police officers two days after the killing.

State v. Peplinski

3 . **Constitutional Law § 36; Homicide § 31— felony-murder — death sentence constitutional**

The imposition of the death penalty in a felony-murder case is not cruel and unusual punishment prohibited by the U. S. and N. C. Constitutions.

4. **Criminal Law § 87— leading question defined**

A leading question is a question which suggests the answer desired, and frequently a question which may be answered by "yes" or "no" is regarded as leading.

5. **Criminal Law § 87— leading questions — no error**

The trial court in a felony-murder prosecution did not err in allowing the State to ask the victim's wife leading questions concerning her husband's habit of carrying large amounts of cash.

6. **Criminal Law § 73— hearsay testimony by victim's wife — no prejudice**

Even if testimony by the murder victim's wife that she heard she hit defendant when she fired her gun in his direction sixteen times was hearsay, defendant was not prejudiced by its admission, since there was other competent evidence positively identifying defendant as one of the men who was fleeing the scene of the attempted robbery and murder and in whose direction the witness fired her gun, and defendant was later found within a quarter of a mile of the crime scene with three bullet wounds in his body.

7. **Criminal Law § 90— impeachment of own witness — showing of prior inconsistent statements**

A district attorney may not discredit a State's witness by eliciting evidence that the witness had made prior statements inconsistent with or contradictory of his testimony; however, the general rule is that improper conduct of counsel is cured when the trial judge sustains the adversary's objection and instructs the jury not to consider it, but this general rule does not apply when the conduct is so gross and prejudicial that no curative action by the trial judge could remove its prejudicial impact from the minds of the jury.

8. **Criminal Law § 90— attempted impeachment of own witness by State — curative instructions — no prejudice**

Where the district attorney attempted to discredit his own witness by showing prior contradictory statements, but the only evidence elicited through the district attorney's attempts to impeach his own witness was that the witness had previously stated that he was going to tell the truth when he was called to testify, there was little evidence of prejudice to defendant; moreover, any prejudice which did arise was cured by the trial court's prompt rulings and curative instructions.

9. **Criminal Law §§ 102, 116— defendant's failure to testify — permissible jury argument for district attorney**

G.S. 8-54 does not prohibit the district attorney from making comments upon the evidence and drawing such deductions therefrom

as were legitimate before the passage of the statute so long as no direct reference is made to the right of the defendant to testify and his failure to do so; in other words, the statute enhanced the rights of defendants but did not abridge the privileges of the prosecution.

**10. Criminal Law §§ 102, 116— all evidence offered by State — district attorney's argument not prejudicial**

Defendant was not prejudiced by the district attorney's references to the fact that the State offered all the evidence in this case, particularly in light of the fact that defendant did not object to those portions of the district attorney's argument or call them to the trial judge's attention so that he might have given proper cautionary instructions.

APPEAL by defendant from *Godwin, J.,* June 1975 Session of ROBESON Superior Court.

The State's evidence, in substance, tended to show that on 18 January 1975 a locksmith in Fayetteville, North Carolina, made a key for a 1973 yellow station wagon bearing Florida license plates. The key was received by an employee of defendant who delivered it to a woman identified as Doris Peplinski. Doris Peplinski drove the station wagon to a house which she shared with defendant and upon arrival, she found defendant Peplinski, David Locklear and Larry Clark in the house. She gave the keys to defendant and left with Tina Aprile who had come to the house in Doris's automobile. After lunch, the two women returned to the house and found that the three men and the yellow station wagon were gone. On the following morning, after Doris had telephoned defendant, the two women drove to Bennettsville, South Carolina, where they joined Peplinski, Locklear and Clark at a restaurant. They all spent the night in a motel room in Bennettsville and afterwards Doris Peplinski, at the request of defendant, reserved the room for an additional night. The two women returned to Fayetteville leaving the station wagon with the men.

David Locklear testified that he, Larry Clark and Peplinski returned to North Carolina on 20 January 1975 so that Clark could collect a debt from Hudler Hunt who lived near Rowland, North Carolina. Upon arriving at the Hunt home at about 6:30 p.m., he remained in the station wagon while the other two men went to the Hunt dwelling. He then heard shots and saw Clark and Peplinski run toward the car. He tried to back the station wagon up but ran into a ditch. He was fright-

State v. Peplinski

ened and fled into the woods where he remained until his arrest on the following day at about 3:00 p.m.

Mrs. Hudler Hunt testified that she and her husband were watching TV at about 6:30 p.m. on 20 January 1975 when she heard the doorbell ring. Upon going to the door, she observed a white man and an Indian. At this point, defense counsel objected and Judge Godwin, after conducting a *voir dire* hearing concerning the admissibility of identification evidence, ruled the evidence to be admissible. When the jury returned, Mrs. Hunt identified defendant as the white man who came to her home on 20 January 1975. She stated that upon observing these men, she did not open the door but returned to the den. Her husband then picked up a weapon and went outside. Defendant Peplinski came into the den and said that he wanted to use the telephone. He explained that he was a chain gang guard and that he needed to get help because an inmate in his custody had escaped at David Miller's station. She became suspicious and left the den because she knew there was a telephone at David Miller's station. Upon reaching the porch, defendant came up behind her and sprayed her with tear gas. She pulled her shirt up over her head and at that time heard the defendant ask the Indian, "Have you got his pocketbook?" Defendant then began spraying the tear gas toward her husband and at that time, both her husband and the Indian began to shoot. She saw her husband fall. Defendant left the porch and asked the Indian, "Did you get it?" The Indian replied, "No, let's get the hell out of here, I'm hit." She returned to the house, obtained her rifle and fired it toward the men sixteen times. She then called a neighbor to help her move her husband's body.

Deputy Sheriff Hubert Stone testified that he and other officers went to the Hudler Hunt home on 20 January 1975 in response to a call. Officer Stone observed that Mr. Hudler Hunt was dead. He then found the dead body of an Indian man, later identified as Larry Clark, in a nearby hogpen. A .32-20 seven-shot revolver containing seven "empty hulls" was found in the dead man's hand. He also found a 1973 Chevrolet station wagon near the Hunt yard with one of its rear wheels in a ditch. The engine was running and the headlights were on. He observed blood on the outside and inside of the station wagon and he further noted a small hole about the size of a .22 bullet hole "about halfway of the top of the car." He related that David Earl Locklear was apprehended in a nearby swamp at about

State v. Peplinski

3:00 p.m. on the next day and that defendant Peplinski was found and arrested in a wooded area about a quarter of a mile from the Hunt home on Wednesday, 22 January 1975. Peplinski had three bullet wounds in his body.

Dr. Marvin Thompson, an expert in pathology, testified that he examined the body of Hudler Hunt on 21 January and found four bullet wounds in the body. He removed two bullets from the body and stated that in his opinion, Hudler Hunt died as a result of multiple gunshot wounds "with subsequent hemorrhage."

An S.B.I. firearms expert testified that in his opinion, the bullets removed from Mr. Hunt's body were fired from the revolver found in Larry Clark's hand.

Defendant offered no evidence.

The jury returned a verdict of guilty of murder in the first degree and defendant appealed from judgment imposing the death penalty.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General Edwin M. Speas, Jr., and Associate Attorney Elizabeth C. Bunting, for the State.*

*J. H. Barrington, Jr., attorney for defendant appellant.*

BRANCH, Justice.

Defendant, by his first assignment of error, challenges the imposition of the death penalty on two grounds. He first argues that the death penalty cannot be imposed because the evidence discloses neither an intent to rob or murder deceased nor any overt act on his part from which such an intent can be inferred. We disagree.

[1] "Any murder . . . which shall be committed in the perpetration or attempt to perpetrate any . . . robbery . . . shall be deemed to be murder in the first degree and shall be punished with death." G.S. 14-17. It is not necessary to support a conviction of felony-murder that defendant actually inflicted the fatal shot. In this jurisdiction, it is well settled that when several persons aid and abet each other in an attempt to perpetrate a robbery, and while so engaged, one of them fatally wounds the victim, all being present, each is guilty of murder

in the first degree. *See State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561; *State v. Kelly,* 216 N.C. 627, 6 S.E. 2d 533.

**[2]**   The State offered evidence tending to show that: (1) Defendant gained entrance to the Hunt home by making false representations, (2) he attempted to incapacitate Mrs. Hunt by the use of tear gas at the time Larry Clark was engaged in an attempt to rob her husband, (3) he assisted Larry Clark in his attempt to rob Mr. Hunt by spraying Mr. Hunt with tear gas, (4) before fleeing the premises, defendant twice asked Larry Clark if he had obtained Mr. Hunt's pocketbook, (5) defendant concealed himself in a nearby wooded area until he was discovered and taken into custody by police officers two days after the killing. In our opinion, this evidence was sufficient to raise reasonable inferences which would support jury conclusions that defendant shared in the criminal intent to rob Mr. Hunt and that he, by overt acts, took part in the attempted armed robbery of Hudler Hunt.

**[3]**   Secondly, defendant contends by this assignment of error that the imposition of the death penalty in a felony-murder case is cruel and unusual punishment prohibited by the United States and North Carolina Constitutions. In the recent case of *State v. Woodson,* 287 N.C. 578, 215 S.E. 2d 607, Chief Justice Sharp, quoting from *State v. Fox, supra,* stated:

"When a murder is 'committed in the perpetration or attempt to perpetrate any . . . robbery, burglary or other felony,' G.S. 14-17 declares it murder in the first degree. In those instances the law presumes premeditation and deliberation, and the State is not put to further proof of either. . . . Furthermore, when a conspiracy is formed to commit a robbery or burglary, and a murder is committed by any one of the conspirators in the attempted perpetration of the crime, each and all of the conspirators are guilty of murder in the first degree." . . .

The authorities cited by defendant do not persuade us that we should abandon the holdings in *Woodson* and the long line of cases which support it.

This assignment of error is overruled.

**[4, 5]**   Defendant by his Assignment of Error No. 2 contends that the trial judge erred in overruling his objections to leading

questions. The exceptions upon which this portion of this assignment of error is based relate to the following:

Q. Was your husband in the habit of carrying lots of cash on him or not, Mrs. Hunt?

MR. HIGH: Object.

THE COURT: Overruled.

THE WITNESS: Yes.

Q. (By Mr. Britt): About how much cash did he normally carry?

MR. BARRINGTON: Object.

THE COURT: Overruled.

Q. (By Mr. Britt): Go ahead.

A. About six or seven thousand dollars.

This constitutes defendant's exception number 18 (R p——)

\*   \*   \*

Q. (By Mr. Britt): Did he or not carry that kind of money in public, Mrs. Hunt?

A. Had it in his pocketbook.

THE COURT: His pocketbook?

THE WITNESS: Yes, sir.

Q. (By Mr. Britt): And where was his pocketbook?

A. In his pocket, left rear pocket.

This constitutes defendant's exception number 19 (R p——)

In 1 Stansbury's North Carolina Evidence § 31, at 83 (Brandis Rev. 1973), we find the following:

. . . A leading question is a question that suggests the answer desired, and frequently a question that may be answered by "yes" or "no" is regarded as leading.

Leading questions have also been defined as those which embody a material fact which admit of an answer a simple "yes"

or "no." 81 Am. Jur. 2d *Witnesses* § 429, at 438. Only the first and third questions above quoted appear to be leading questions. The vice in these questions is that they embody a fact which could be answered by a simple "yes" or "no" and suggest to the witness the answer desired. Even so, it is well established in this jurisdiction that whether counsel may ask a leading question is a matter within the discretion of the trial judge and his ruling thereon will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Staten,* 271 N.C. 600, 157 S.E. 2d 225; *State v. Painter,* 265 N.C. 277, 144 S.E. 2d 6; *Ducker v. Whitson,* 112 N.C. 44, 16 S.E. 854; 81 Am. Jur. 2d *Witnesses* § 430, at 438, 439. We find no abuse of discretion in Judge Godwin's rulings.

**[6]** By this assignment of error, defendant also contends that the trial judge erred by overruling counsel's objection and motion to strike hearsay testimony. During her testimony, the witness Mrs. Hudler Hunt testified that she obtained her rifle and fired sixteen times. Immediately after this testimony, the record shows the following:

. . . Do you know whether or not you hit anybody?

A. I don't know it, but I heard it.

Q. You heard it. What did you hear?

A. I heard—

MR. BARRINGTON: Object to what she heard.

THE COURT: Just a moment. Say again. You heard what?

THE WITNESS: That I hit Peplinski.

MR. HIGH: Object. Move to strike, your Honor.

THE COURT: The objection is overruled. Motion denied.

"Evidence, oral or written, is called hearsay when its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness by whom it is sought to produce it." . . .

Hearsay evidence, unless it falls within one of the recognized exceptions to the hearsay rule, is inadmissible.

1 Stansbury's North Carolina Evidence § 138, at 458, 460 (Brandis Rev. 1973).

The above-quoted testimony is ambiguous in that it might be interpreted to mean that the witness actually heard the shot hit defendant. In that case, it would not come within the hearsay rule. On the other hand, the testimony could be interpreted to mean that someone told the witness that she had hit defendant. Under the latter interpretation, the evidence would clearly be hearsay. Assuming, *arguendo,* that the testimony did violate the hearsay rule, we discern little prejudice to defendant. He was positively identified as one of the men who was fleeing the scene of the attempted robbery and in whose direction Mrs. Hunt fired sixteen times. He was found within a quarter of a mile of the Hunt residence in a wooded area with three separate bullet wounds in his body. Under these circumstances, whether defendant was wounded by Mrs. Hunt or someone else would add little to the State's other evidence showing that defendant was present and aiding and abetting in an attempted armed robbery in which Hudler Hunt was fatally wounded. In our opinion, the evidence admitted by the trial judge's discretionary rulings on the leading questions and his ruling on the alleged hearsay evidence was not of such import as to raise a reasonable possibility that the evidence contributed to defendant's conviction.

Defendant's Assignment of Error No. 2 is overruled.

Defendant attacks the argument of the district attorney and the manner in which he examined the State's witness, David Earl Locklear.

During the direct examination of the witness Locklear, the following exchange took place:

Q. Well, did you tell the officers anything about going there to rob Hudler Hunt?

MR. BARRINGTON: Object.

MR. HIGH: Object.

THE COURT: The objection is sustained. Ladies and Gentlemen, you will not consider a question put to the witness as evidence. It is not evidence and, therefore, you will not consider it as evidence, the question that has just been put to the witness.

Q. (By Mr. Britt) : Do you remember talking to me this morning before Court?

A. Talking to you this morning?

Q. Yes, sir.

A. Yes, sir.

Q. Do you remember talking to me Sunday down here at my office for about two hours?

A. Yes, sir.

Q. Do you remember telling me what you were going to testify to? Sir?

A. Yes, sir.

Q. What did you tell me you were going to testify to?

MR. HIGH : Object.

MR. BARRINGTON : Object. If the Court please, it seems—

THE COURT: I am assuming that your objection is based upon the proposition that in your view the District Attorney is attempting to challenge his own witness?

MR. HIGH : This is a State's witness.

THE COURT: I understand whose witness he is. I understand your objection and am going to try to resolve it. Read the question back, please, Mr. Storms.

(Last question read by Reporter.)

THE WITNESS : I told him I—

MR. BARRINGTON : Wait.

THE COURT: Just a moment. Overruled. He may answer the question: "What did you tell me you were going to testify to?"

Q. (By Mr. Britt) : Go ahead.

A. That I was coming in the courtroom and asked me what I was going to testify to, about the truth of what they had told me to say. The officers. That is, Hubert Stone, Frank Johnson and Mr. Joe Freeman Britt.

State v. Peplinski

Q. Let me see if I understand you, David Earl. Are you saying that Hubert Stone sitting here—

A. That's right.

Q. —and I believe Frank Johnson—

A. Frank Johnson.

Q. —the SBI Agent was there and I was there?

A. That's right, sir.

Q. And my assistant, Mr. Martin McCall, was there?

A. That's right.

Q. And you are saying we told you to come in here and tell a lie and—

MR. BARRINGTON: Objection.

THE WITNESS: Well, you—

THE COURT: Just a moment. I'm going to rule on the objection.

The objection to the question put is sustained. You may not answer the last question put to you by the District Attorney. You may answer the original question that he put to you, which, as I understand you have not yet answered; and the Reporter will read that question again back to you. It had to do with his question regarding what you told him you were going to testify.

Now, you wait and listen to the Reporter read the question back to you. If you don't understand it, let it be known.

(Requested question read by Reporter.)

THE COURT: You may answer that question.

THE WITNESS: I was going to testify to the truth.

MR. BRITT: May I proceed, your Honor.

THE COURT: Yes, sir. Let me interrupt to inquire if you think that your direct examination will continue some time?

State v. Peplinski

MR. BRITT: In view of the recent developments, I think not.

MR. BARRINGTON: Object to the comment.

THE COURT: Objection is sustained. You will not consider the last comment made by counsel.

This constitutes defendant's exception number 12 (R p——)

MR. BRITT: If it please the Court, the State would move at this time that the Court declare David Earl Locklear a hostile witness so that the State can cross examine him about previous statements.

At this point, Judge Godwin conducted an extended *voir dire* on the question of whether the witness would be declared a hostile witness. At the conclusion of the *voir dire* hearing, David Earl Locklear returned to the witness stand and resumed his testimony before the jury at which time the following occurred:

I am the same David Earl Locklear who was on the witness stand yesterday. I have seen State's Exhibit 2 which is sealed up. In that envelope I find a seven-shot Russian revolver, which I have seen before. The last time I seed it it belonged to Larry Clark.

Q. Okay. That's what you told me on Sunday; is that correct?

MR. HIGH: Object.

THE COURT: Sustained.

Q. (By Mr. Britt): All right. Now, you made statements about this case to the officers on the day after you were arrested; haven't you?

A. No, sir.

Q. Huh?

A. No, sir.

Q. Never made a statement to Mr. Hubert Stone sitting here?

MR. HIGH: Object.

---

State v. Peplinski

---

Mr. Barrington: Object.

The Court: Sustained.

Q. (By Mr. Britt): Did you ever made a statement, then, to Mr. Frank Johnson, sitting here?

Mr. High: Object.

Mr. Britt: What is the ruling?

The Court: The question is: Did he ever make a statement?

Mr. Britt: Yes, sir.

The Court: You may say yes or not (sic).

The Witness: No.

Q. (By Mr. Britt): You never made a statement to this officer sitting here?

Mr. Barrington: Object.

Mr. High: Object.

The Court: Sustained.

Q. (By Mr. Britt): Have you ever made a statement to me before yesterday when you were in Court, concerning this case?

Mr. Barrington: Objection.

The Court: Overruled.

The Witness: No, sir.

The Court: His answer is in.

Q. (By Mr. Britt): Let me ask you this: Are you a defendant charged with murder also in this lawsuit?

Mr. High: Object.

The Court: Sustained.

Q. (By Mr. Britt): Are you a defendant charged with conspiracy to commit armed robbery in this lawsuit?

Mr. Barrington: Object.

MR. HIGH: Object.

THE COURT: Sustained.

MR. BRITT: Take the witness.

THE COURT: Just a moment. Ladies and gentlemen, I have heretofore reminded you—I do so again—and you will bear in mind throughout the remainder of this trial that unanswered questions put to a witness do not constitute evidence. Evidence is the answer of a witness to a question put by counsel. Any question which has been put to this witness to which an objection was interposed and which objection was sustained, does not constitute evidence and you may not so consider it.

The record does not disclose the trial judge's ruling declaring whether the witness was a hostile witness; however, the ensuing questions and rulings before the jury indicate that the ruling was adverse to the State's position.

[7] It is still the well-established law in this jurisdiction that a district attorney may not discredit a State's witness by eliciting evidence that the witness had made prior statements inconsistent with or contradictory of his testimony. *State v. Pope,* 287 N.C. 505, 215 S.E. 2d 139; *State v. Anderson,* 283 N.C. 218, 195 S.E. 2d 561. However, the general rule is that improper conduct of counsel is cured when the trial judge sustains the adversary's objection and instructs the jury not to consider it. This general rule does not apply when the conduct is so gross and prejudicial that no curative action by the trial judge could remove its prejudicial impact from the minds of the jury. *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283.

In *State v. Self,* 280 N.C. 665, 187 S.E. 2d 93, the defendant was prosecuted on the charges of kidnapping, rape and crime against nature. On cross-examination, the State asked the defendant if he had not tried to gain entrance into a woman's house in another county on the pretext of seeing the house as an interested possible purchaser. The court instructed the jury not to consider the question but to strike it from their minds. Finding no prejudicial error, we stated:

. . . We hold, however, that the court's prompt action in sustaining defendant's objection to the question and in excusing the jury and instructing the solicitor not to ask

---

---

further questions along that line, coupled with the court's specific instruction to the jury not to consider the question but to strike it from their mind, was sufficient to remove any possibility of error.

In *State v. Moore*, 276 N.C. 142, 171 S.E. 2d 453, 458 (1970), Justice Sharp quoted with approval from *State v. Ray*, 212 N.C. 725, 729, 194 S.E. 482, 484 (1938):

> ". . . '[O]ur system for the administration of justice through trial by jury is based upon the assumption that the trial jurors are men of character and of sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so. *Wilson v. Mfg. Co.*, 120 N.C. 94, 26 S.E. 629.' Accord, *State v. Bruce*, 268 N.C. 174, 150 S.E. 2d 216; 2 Strong, N. C. Index 2d Criminal Law § 96 (1967)."

[8] In instant case it is obvious that the district attorney was *attempting* to discredit his own witness by showing prior contradictory statements. However, the only evidence elicited by the district attorney through his ill-advised attempts to impeach his own witness was that the witness had previously stated that he was going to tell the truth when he was called to testify. We find little evidence of prejudice to defendant since the witness seemed to get the better of this exchange. Any prejudice arising from this portion of the district attorney's examination was cured by the able trial judge's prompt rulings and curative instructions.

[10] We next turn to defendant's contention that prejudicial error resulted from the following portion of the district attorney's argument:

> Now, the facts are pretty simple in this case. Every scintilla of evidence adduced in this courtroom, in this lawsuit, was put on by the State of North Carolina. Every bit of it.
>
>                \*   \*   \*
>
> . . . You see, the way the case has developed, the State presenting all the evidence in this case, I find myself in a position of being sandwiched on the arguments, double teamed. . . .

G.S. 8-54, in part, provides:

. . . In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness, and his failure to make such request shall not create any presumption against him. . . .

[9]   We have held that the effect of this statute is to prohibit the district attorney from commenting on defendant's failure to testify. *State v. McCall*, 286 N.C. 472, 212 S.E. 2d 132; *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125. Nevertheless we recognize that the statute does not prohibit the district attorney from making comments upon the evidence and drawing such deductions therefrom as were legitimate before the passage of the statute so long as no direct reference is made to the right of the defendant to testify and his failure to do so. This statute enhanced the rights of defendants but did not abridge the privileges of the prosecution. *State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10; *State v. Weddington*, 103 N.C. 364, 9 S.E. 577 (1889).

In *State v. Smith, supra,* the district attorney, in his argument, said "I ask you to decide the case on the evidence that you have before you and ask that you remember that it is uncontradicted." Then defendant contended that this remark was an improper remark on the defendant's failure to testify and that the failure of the trial judge to censor the argument and give curative instructions on his own motion was prejudicial error. Rejecting this contention, this Court speaking through Justice Huskins, in part stated:

. . . Contradictions in the State's evidence, if such existed, could have been shown by the testimony of others or by cross-examination of the State's witnesses themselves. Thus the prosecution was privileged to argue that the State's evidence was uncontradicted and such argument may not be held improper as a comment upon defendant's failure to testify. . . .

*See State v. Walker*, 251 N.C. 465, 112 S.E. 2d 61, *cert. denied* 364 U.S. 832, 5 L.Ed. 2d 58, 81 S.Ct. 45; *State v. Hooker*, 145 N.C. 581, 59 S.E. 866.

[10]   We believe that jurors are men and women of sufficient intelligence and capacity to observe trial proceedings so as to

know when only the State has offered evidence. The remark that the State put on all of the evidence may be just as easily interpreted to refer to the absence of testimony by witnesses other than defendant.

The district attorney's statement that "the way the case has developed, the State presenting all of the evidence, I find myself in a position of being sandwiched on the arguments" was a reference by the district attorney to the fact that the failure of defendant to offer *any* evidence gave defense counsel the last argument. Neither of these statements was a *direct* reference to defendant's right to testify or his failure to exercise this right.

If a district attorney improperly comments on a defendant's failure to testify, this error may be cured by a withdrawal of the remark or by a statement of the court that it was improper, followed by an instruction to the jury to disregard it. *State v. McCall, supra; State v. Monk, supra.* Here defendant did not object to this portion of the district attorney's argument or call it to the trial judge's attention so that he might have given the proper cautionary instructions. Nevertheless, in his charge to the jury, Judge Godwin fully charged that the burden was on the State to prove every element of the crime beyond a reasonable doubt and further instructed:

> The defendant has offered no evidence during the trial of this case and I mention that fact for one purpose and one alone and that is to afford me this additional opportunity to remind you that he had no obligation to do so; that the law imposes upon him no burden of proof; that he has a perfect right to decide upon the strategy of his own trial; that he has a perfect right to decide—to rely upon what he may consider to be the weakness of the State's case; that the sole burden of proof is upon the State to satisfy you of the truth of the charges, unaided by the defendant, and that you may not hold that against this defendant, the fact that he did not offer evidence. You may not punish any man for doing a lawful thing, a thing that he has a right to do.

Under these circumstances, we find no prejudicial error in the district attorney's references to the fact that the State offered all the evidence in this case. Neither do we find any substantial prejudice to defendant flowing from the district attorney's

argument that the witness J. L. Sams, an officer whose duties included the apprehension of fugitives, knew Larry Clark. Although there seems to be some confusion as to the basis of the trial judge's instructions, he unequivocally told the jury not to consider this remark. We perceive little prejudice in this argument since it related indirectly to the character of an alleged confederate rather than the defendant. In our opinion, the cautionary instructions and the judge's charge removed any possible prejudice to defendant.

Finally, in light of the overwhelming evidence against this defendant, any errors growing out of the district attorney's arguments and examination of the witness David Earl Locklear were harmless error beyond a reasonable doubt. *Schneble v. Flordia,* 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056; *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824; *State v. Watson,* 281 N.C. 221, 188 S.E. 2d 289.

We feel compelled to note that except for the trial judge's prompt rulings and cautionary instructions and the overwhelming evidence against this defendant, the district attorney's continued attempts to cross-examine his own witness could well have needlessly required a new trial.

Examination of this entire record reveals no error warranting a new trial.

No error.