STATE OF NORTH CAROLINA v. HOWARD BLACK

No. 172A81

(Filed 4 May 1982)

**1. Criminal Law § 87.1 — prosecutor leading State's witness — no reversable error**

   The trial judge did not abuse its discretion in allowing the prosecutor to attempt to clarify one of the State's witness's answers. The witness was a semi-invalid stroke victim who had difficulty in comprehending and responding to questions.

**2. Criminal Law § 90 — impeaching own witness under guise of corroborative evidence — curative instructions by judge**

   Where the trial court repeatedly refused to allow the district attorney to introduce a prior inconsistent statement of one of its witnesses, the trial court cured any error arising from the district attorney's ill-advised attempts to impeach his own witness by introducing contradictory or inconsistent statements of the witness under the guise of corroborative evidence.

**3. Criminal Law § 66.10 — pretrial identification procedure — waiver of right to object**

   Where defendant failed to object to evidence of the victims' pretrial identification of the defendant, did not request a *voir dire* hearing, and allowed evidence of the victims' identification of the defendant as the perpetrator to be admitted into evidence without objections during the trial, the defendant could not maintain before an appellate court that his rights were prejudiced at trial.

Justice EXUM dissenting.

APPEAL by the defendant from *Judge Charles T. Kivett,* presiding at the 14 September 1981 Criminal Session of FORSYTH Superior Court.

The defendant was charged in bills of indictment, proper in form, with first-degree sexual offense and kidnapping. He entered pleas of not guilty and was tried before a jury which found him guilty as charged. From the judgments sentencing him concurrently to life imprisonment and imprisonment for 25 years to life, the defendant appeals to this Court as of right pursuant to G.S. 7A-27.

*Rufus L. Edmisten, Attorney General, by Charles J. Murray, Special Deputy Attorney General for the State.*

*Zachary T. Bynum, III and David V. Liner, Attorneys for defendant-appellant.*

MITCHELL, Justice.

In this appeal, the defendant contends that the trial court erroneously allowed the district attorney to cross-examine and impeach a State's witness and erroneously admitted incompetent evidence. For the reasons enunciated herein, we hold that the defendant had a fair trial free from prejudicial error.

On the evening of 16 April 1981, Artemus Peterson, then eight years old, and his brother Monte Peterson, seven years old, were approached by a man as they walked down a street near their home in Winston-Salem. The man asked if they knew where someone named Ronnie lived. Acting pursuant to standing instructions from their mother, the boys feigned ignorance although they in fact knew where Ronnie lived.

The man grabbed the boys by the napes of their necks and threw them into the front seat of his 1970 Impala. He drove them to a house and parked in the driveway. They remained in the car, playing pattycake, while he went inside. When he returned, he drove by a convenience store and bought some red wine and a bag of Cheese Doodles. He finally took them to Winston Lake Park, parked and told them the car was out of gas.

He tried to make them drink the wine, but they repeatedly spit it out without swallowing. Monte eventually went to sleep in the back seat of the car, and the man took Artemus into some woods near the lake. After getting a drink of water, Artemus went to sleep on a park bench. When he awakened, his pants and underpants were off and his shirt was pulled up.

The man, naked from the waist down, approached the boy and according to Artemus, he "made me suck his weenie." The man later attempted anal sex and hit the victim in the crotch with his fist.

Meanwhile, Officer J. A. Berry of the Winston-Salem Police Department discovered the Impala in the parking area. He awakened Monte, learned his identity, and took him home.

After warning Artemus to keep quiet or the KKK would throw him in the lake, the man drove him to a street corner near his home. Artemus arrived home shortly after the police took Monte there. The boys then related the evening's events.

The police ascertained an address by means of the license plate number of the Impala. Upon their arrival at the address, the door was answered by the defendant, Howard Black. When the defendant told them he was the only one who used the car, the officers asked him to come to police headquarters.

After the defendant was advised of his constitutional rights and he signed a rights waiver form, officers confronted him with the boys' story. He denied any involvement. When the officers asked him to submit to having his photograph placed in a lineup with other photographs, he refused and instead demanded an immediate confrontation with his accusers. The boys were in fact brought to the police station and identified the defendant as the perpetrator.

[1] The defendant first assigns that the trial court erroneously allowed the district attorney to lead one of the State's witnesses. In questioning Steve Jones about the defendant Howard Black, the following exchange took place:

Q. (Mr. Tisdale) Does he walk with a limp?

A. Walk with a what?

Q. A limp.

A. I walk with a limp?

Q. Yes.

A. Yeah, walk with a stick.

Q. No, I'm talking about Howard Black.

A. No, not to my memory.

Q. Do you know whether he was ever in an automobile accident?

A. No, I do not. I do not.

Q. Does he walk with a limp?

MR. LINER: Objection. He has already asked that.

THE COURT: Objection overruled. Go ahead and answer the question.

EXCEPTION No. 2

Q. (Mr. Tisdale) Does he walk with a limp?

A. Nope.

Q. You're under oath now, Mr. Black — I mean, Mr. Jones.

MR. LINER: Your Honor, I object. This is his witness. This is not a cross examination.

THE COURT: Well, go ahead and answer the question. The objection is overruled.

EXCEPTION No. 3

Q. (Mr. Tisdale) Does he walk with a limp?

A. Nope.

The defendant did not object to the original question "Does he walk with a limp?" Therefore, he waived any objection to the evidence as admitted and to the form of the question as propounded. His later attempt to object to the repetition of the question was of no avail. *State v. Satterfield,* 300 N.C. 621, 268 S.E. 2d 510 (1980).

Even had there been a timely objection, the trial court did not commit reversible error in allowing the examination as conducted. The examination of witnesses and the form of questions permitted are matters within the discretion of the trial court. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972). Absent an abuse, the exercise of such discretion will not be disturbed on appeal. *State v. Willis,* 281 N.C. 558, 189 S.E. 2d 190 (1972). In its discretion, the trial court may in certain circumstances allow a prosecutor to ask a State's witness leading questions. These include situations where the witness "has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where . . . the mode questioning is best calculated to elicit the truth." *State v. Greene,* 285 N.C. 482, 492, 206 S.E. 2d 229, 236 (1974).

Mr. Jones was a semi-invalid stroke victim. From the outset of his testimony, he quite obviously had difficulty in comprehending and responding to questions. For example:

MR. TISDALE: Mr. Steve Jones. Is Mr. Jones in the courtroom? Mr. Jones, come up, please. You might want to come this way, Mr. Jones. You'll have a little more room. Mr. Jones, will you be sworn, please? Will you be sworn on the Bible?

THE COURT: Raise your right hand, please. Let someone hold your cane there, sir. Thank you. You can raise your right hand. Put your hand up.

WHEREUPON, the witness, *STEVE JONES*, first being duly sworn by the Court, on his oath testified as follows:

[4:03 o'clock p.m.]

THE COURT: Can you get up here all right, Mr. Jones. You have some steps to come up. Can you get up there all right?

THE WITNESS: I think so.

DIRECT EXAMINATION By Mr. Tisdale to STEVE JONES:

Q. Would you tell us your name, please?

A. Beg pardon?

Q. Would you state your name, please.

A. State your name?

Q. What's your name?

A. Steve Jones.

With respect to whether the defendant walked with a limp, Mr. Jones apparently misunderstood the original question. The district attorney had to explain that the question referred to the defendant and not to the witness himself. Mr. Jones' answer did not immediately follow the question and, apparently in an attempt to clarify the answer, the prosecutor repeated the question. Although Mr. Jones responded immediately to this second question, the defendant interposed a second objection and the trial judge ruled "Well, go ahead and answer the question. The objection is overruled." This led to the question being answered a third time. In consideration of the witness's demonstrated difficulty as a result of age and infirmity to respond to questions, the trial judge did not abuse his discretion in allowing the prosecutor to attempt to clarify the witness's answers.

Moreover, even had the prosecutor improperly examined his own witness, any error attributable thereto was harmless. The district attorney apparently intended to elicit testimony that the defendant Howard Black walked with a limp. Yet there was no unambiguous evidence that the perpetrator walked with a limp. The victim testified that his manner of gait was "linky." Such testimony from a nine year old witness was likely as mystifying to the jury as it is to an appellate court. There is no indication from the record what the victim meant.

Finally, any possible error was cured by the witness's consistent testimony that the defendant did not walk with a limp. The admission of this testimony therefore inured to the defendant's favor. In a similar situation this Court ruled that there was "little evidence of prejudice to defendant since the witness seemed to get the better of this exchange." *State v. Peplinski*, 290 N.C. 236, 250, 225 S.E. 2d 568, 576 (1976). The manner of examination of the witness Steve Jones by the district attorney thus did not constitute reversible error.

[2] The defendant next contends that the trial court erroneously allowed the district attorney to impeach the State's own witness by introduction of a prior inconsistent statement. The witness Steve Jones testified that the defendant did not leave home on the night in question. The prosecution then called Officer J. D. Brown of the Winston-Salem Police Department:

THE COURT: All right, it is my understanding that you are preparing to elicit testimony for the purpose of corroborating an earlier witness for the State, Steve Jones.

MR. TISDALE: Yes, sir.

THE COURT: Now, ladies and gentlemen, I instruct you that you may consider what this officer relates with respect to what Steve Jones told him solely for the purpose of corroborating what the witness, Steve Jones, himself had to say when he was on the witness stand earlier, if you find that it does, in fact, corroborate or tend to substantiate what he had to say; if not, you will disregard it. Keep that in mind. Thank you.

Q. (Mr. Tisdale) Officer Brown, you say you talked to Steve Jones?

A. Yes, sir.

Q. And that was the same gentleman who testified yesterday?

A. Yes, sir, it was.

\*    \*    \*

Q. And what, if anything, did he tell you?

A. I went back to his residence sometime about daylight the following morning and talked to him. And he said that — I asked him had Mr. Black been there all night or what he could tell me about the car. He said Mr. Black left about seven-thirty the night before and went out to Joe's Fine Foods Store, which is approximately a quarter of a mile up the street from where they live. And he said he was gone about thirty minutes, and he came back in, and then sometime later on in the night he went back out again.

MR. LINER: Objection, Your Honor.

THE COURT: Well, disregard it if it doesn't corroborate, members of the jury. Go ahead.

Q. (Mr. Tisdale) Go ahead.

A. Said after he went out the second time that he, Mr. Jones, had laid down across the bed —

MR. LINER: — Objection again to continuing this.

THE COURT: All right, disregard it if it doesn't corroborate. Go ahead.

THE WITNESS: And he said he didn't know what time he came back in, but he hadn't been in but just a short time when we came to the house —

MR. LINER: — Objection again, Your Honor. Move to strike.

EXCEPTION NO. 4

THE COURT: Do not refer further to any alleged statement of Jones with respect to the defendant's having gone out again. Do not further refer to that. Go ahead now.

MR. TISDALE: No further questions.

THE COURT: Disregard that, members of the jury.

The rule that the State may not impeach its own witness has long been the law in North Carolina. *State v. Moore,* 300 N.C. 694, 268 S.E. 2d 196 (1980); *State v. Taylor,* 88 N.C. 694 (1883). A prosecutor may not circumvent this standard, as was attempted here, by introducing contradictory or inconsistent statements of the witness under the guise of corroborative evidence. *State v. Tinsley,* 283 N.C. 564, 196 S.E. 2d 746 (1973). Although violation of this rule by the actual introduction of incompetent evidence may result in serious consequences, the abortive actions of the district attorney in the instant case fall short of conduct which would mandate reversal of this defendant's conviction.

In *State v. Peplinski,* 290 N.C. 236, 225 S.E. 2d 568 (1976), the district attorney attempted to discredit the State's witness through cross-examination regarding a prior inconsistent statement. The witness consistently refused to acknowledge any prior statement as to what he would testify at trial, and insisted that he had promised only to tell the truth. This court noted that the prosecutor's "ill-advised attempts to impeach his own witness" were unsuccessful, and ruled that "[a]ny prejudice arising from this portion of the district attorney's examination was cured by the able trial judge's prompt rulings and curative instructions." *Id.* at 250, 225 S.E. 2d at 576.

*Peplinski* controls the case at bar. Both cases involved not a violation of a rule of evidence, but merely an unsuccessful attempt to do so. The trial court in the instant case repeatedly refused to allow the district attorney to introduce a prior inconsistent statement. Since the testimony by Officer Brown was in the guise of corroborative evidence, the trial court initially instructed the jury to consider the officer's testimony only to the extent it tended to corroborate or substantiate Steve Jones' testimony. Each time defense counsel objected to testimony as contradictory, the trial court instructed the jury to disregard it if it failed to corroborate. When the defense attorney moved to strike, the trial court directed the district attorney to desist from the line of questioning regarding the defendant's absence from his home on the night in question. The trial court finally instructed, "Disregard that, members of the jury." The trial court's refusal to allow the jury to consider evidence which was not corroborative

*a fortiori* excluded evidence that the defendant was absent from his home on the night in question. The final instruction directed the jury to disregard the entire line of questioning. "[W]here objectionable evidence is withdrawn and the jury instructed not to consider it no error is committed because under our system of trial by jury we assume that jurors are people of character and sufficient intelligence to fully understand and comply with the court's instructions and they are presumed to have done so." *State v. Siler*, 292 N.C. 543, 553, 234 S.E. 2d 733, 740 (1977); *State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38 (1974), *modified*, 428 U.S. 903, 49 L.Ed. 2d 1207, 96 S.Ct. 3205 (1976). As in *Peplinski*, prompt action by the trial court cured any error arising from the district attorney's ill-advised attempts to impeach his own witness.

[3] The defendant finally assigns as error the admission of evidence of the victim's pretrial identification of the defendant. After the defendant arrived at police headquarters, he was apprised of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). He told police officers that he understood his rights and he did not want a lawyer present. He also signed a constitutional rights waiver form acknowledging these statements. When the officers asked if he would submit to a photographic lineup, he refused and instead demanded an immediate confrontation with the victims. The victims were in fact brought to the station and identified the defendant as the perpetrator.

Defense counsel initially failed to object to evidence of the victims' pretrial identification of the defendant. "A defendant cannot challenge an in-court identification without at least a timely general objection." *State v. Brady*, 299 N.C. 547, 557, 264 S.E. 2d 66, 72 (1980). Neither did the defense request a *voir dire* hearing. *See State v. Cook*, 280 N.C. 642, 187 S.E. 2d 104 (1972). Moreover, on four other occasions during the trial, evidence of the victims' identification of the defendant as the perpetrator was admitted without objection. "It is the well-established rule that when evidence is admitted over objection but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost." *State v. Little*, 278 N.C. 484, 490, 180 S.E. 2d 17, 21 (1971).

Upon such abundant evidence of waiver, the defendant cannot maintain before an appellate court that his rights were prejudiced at trial. We therefore have no occasion to determine whether the defendant was subjected to an unconstitutional identification process or whether he waived his interest in the form and manner of such an identification process by his spontaneous demand for an immediate confrontation with his accusers.

Our review of the record impels the conclusion that the defendant has had a fair trial free of prejudicial error.

No error.

Justice Exum dissenting.

I cannot agree with the majority's conclusion that the state tried but failed to elicit inadmissible testimony from its witness Brown. As the majority correctly concludes, it was improper for the state to offer Brown's testimony as "corroborative" of its witness Jones when in fact Brown's testimony contradicted what Jones had said on the stand. Jones, testifying for the state, said that on the day these crimes were allegedly committed, defendant lived with him. Jones said during the "first part of the night" (the crimes were allegedly committed at approximately 6 p.m.) he and defendant were drinking beer at defendant's house. Jones said defendant "didn't go out that night, not to my knowing." Jones said later in the evening he went to sleep and that "I was asleep if he [defendant] did go out." Brown, however, testified that Jones, prior to trial, had told him that defendant had left Jones' home at "about 7:30" on the evening in question. The majority concedes that Brown's testimony should not have been admitted but finds no error because it says the state's effort to elicit Brown's testimony was "aborted."

In my view the state quite successfully proffered Brown's inadmissible testimony. After Brown testified to Jones' prior inconsistent statement, defense counsel promptly objected. (There was no cause to object to the question, "And what, if anything, did he tell you?", because the state represented that Brown's testimony would be corroborative of, not inconsistent with, Jones'.) Technically, of course, defendant should have moved to strike; but under these circumstances the trial judge should have, in

response to the objection, instructed the jury to disregard Brown's answer because the answer was obviously, as a matter of law, inadmissible. Yet the trial judge left the question of its admissibility to the jury, telling it to "disregard [it] if it doesn't corroborate." The admissibility of the testimony was for the judge, not the jury.

Finally, defendant's counsel moved to strike the incompetent testimony. Clearly at this point the judge should have allowed the motion and told the jury in no uncertain terms to disregard the testimony. Instead, the judge admonished the state not to continue the line of questioning. Its purpose by this time accomplished, the state had no need to continue and so indicated by saying, "No further questions." The court then replied, "Disregard that, members of the jury."

One wonders, as I am sure the jury must have wondered, what the judge meant by "that." It could have meant, so far as the jury knew, Mr. Tisdale's last statement, or the last statement made by the trial judge. It clearly did not constitute a granting of defendant's motion to strike, nor a direction to the jury not to consider Brown's incompetent testimony.

Believing that a reasonable possibility exists that if this testimony had not been admitted, "a different result would have been reached at the trial," G.S. 15A-1443(a), I am constrained to vote for a new trial.