STATE OF NORTH CAROLINA v. CHARLES TERRY NORMAN AND ELLA
LUCAS NORMAN

No. 8421SC1306

(Filed 17 September 1985)

1. Narcotics § 4— conspiracy to traffick in cocaine—sufficient evidence

    Evidence that defendant told a third party that she knew a source who could supply him with a kilo of cocaine and that the third party and defendant "arrived at" a price of $55,000 for a kilo was sufficient to support defendant's conviction of conspiracy to traffick in 400 grams or more of cocaine. G.S. 90-95 (h)(3)(c).

2. Criminal Law § 89.4— corroboration—out-of-court statements—substantial inconsistencies with trial testimony

    The trial court erred in permitting the State to introduce a witness's out-of-court statements to his attorney concerning his negotiations with defendant for the purchase of cocaine to corroborate the witness's trial testimony where the out-of-court statements were substantially inconsistent with the trial testimony.

3. Criminal Law § 89.3— consistency of pretrial statements with trial testimony —opinion by officer

    The trial court erred in permitting a police officer to state his opinion that a witness's pretrial statements were consistent with his trial testimony where the officer was not asked to relate to the jury what the witness had said to him.

4. Criminal Law § 34.1— evidence of other offenses—inadmissibility

    The trial court in a prosecution for conspiracy to traffick in cocaine erred in allowing a witness to testify that he had previously purchased drugs from friends who told him that the drugs came from defendant since the testimony was hearsay and was relevant only to show defendant's bad character or disposition to commit the offense for which she was being tried.

5. Criminal Law § 96— volunteered statement by witness—error cured by instructions

    Any error in an undercover officer's volunteered testimony that he could not work in Yadkin County because defendant's co-conspirator had told him that his "friend" was a member of Hell's Angels was cured when the court sustained defendant's objection and instructed the jury not to consider it.

6. Narcotics § 4— conspiracy to traffick in cocaine—sufficient evidence

    The State's evidence was sufficient to support a finding that the male defendant entered into and became a part of a conspiracy between his wife and a third party to sell or deliver one kilo of cocaine so as to support his conviction of conspiracy to traffick in 400 grams or more of cocaine.

APPEAL by defendants from *Wood, Judge.* Judgment entered in FORSYTH County Superior Court 16 August 1984. Heard in the Court of Appeals 27 August 1985.

Defendants were convicted of conspiracy to traffick in 400 grams or more of cocaine. At trial, the State's evidence tended to show the following circumstances and events. James Michael Patillo, a medical equipment salesman, was acquainted with defendant Ella Norman, who was employed at Baptist Hospital in Winston-Salem, and her husband, defendant Terry Norman. Patillo, a heavy user of cocaine, lost his source in August of 1983. In September of 1983, Patillo encountered Ella Norman at Baptist Hospital and inquired whether she knew of a source of cocaine. Patillo had previously purchased drugs from persons who told him the drugs came from Ella Norman. Although nothing happened as a direct result of the August conversation, in October or November, Ella Norman gave Patillo a "sample" of cocaine, less than a gram. In October of 1983, Patillo was contacted by Winston-Salem Police Officer Phil Kirkman, who was working as an undercover narcotics agent. Kirkman inquired of Patillo as to a possible source for large quantities of cocaine. Patillo then contacted Ella Norman about obtaining cocaine, but she stated she was not interested. About a month later, Ella Norman called Patillo at his home at Lake Norman and indicated that she knew of a source which could supply a large amount of drugs, and that the price for one kilo (about two pounds) of cocaine would be seventy-five thousand dollars. Patillo later had further discussion with Ella Norman about the price and "arrived" at a price of fifty-five thousand dollars for a kilo. Patillo also obtained another "sample" of cocaine from Ella Norman.

Patillo met with Kirkman on 9 November 1983, in Winston-Salem, the two of them discussing a large purchase of cocaine. Patillo then drove to Yadkinville, where he called the Norman residence and talked to Terry Norman, requesting that he meet Patillo in Yadkinville. Norman met Patillo and they then drove to the Norman residence in Norman's truck. Ella Norman arrived soon thereafter and the three of them discussed a possible sale of cocaine. Patillo informed the Normans that he wanted to make the purchase for "Scott" (Kirkman). Patillo called Kirkman from the Norman's residence to discuss where a sale might be carried out, but no agreement was reached and no sale was carried out.

Ella Norman returned Patillo to Yadkinville. During the course of these events, Patillo did not know that Kirkman was an undercover police officer. Patillo discussed "Scott" (Kirkman) at some length with the Normans, the three of them speculating as to who "Scott" might be.

From fines and sentences of imprisonment entered on the verdict, defendants have appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Charles M. Hensey, for the State.*

*Morrow and Reavis, by John F. Morrow and Clifton R. Long, Jr., for defendant Charles Norman.*

*White and Crumpler, by Fred G. Crumpler, Jr. and Robin J. Stinson, for defendant Ella Norman.*

WELLS, Judge.

I. *Defendant Ella Norman's Appeal*

[1] In one of her assignments of error, defendant Ella Norman contends that the State was not able to show that she ever agreed to sell any amount of cocaine to the State's witness Patillo, and that the trial court therefore erred in denying her motion to dismiss for insufficiency of the evidence. We disagree. The evidence that Ella Norman called Patillo and told him that she knew a source that could supply Patillo with drugs Patillo needed or a larger amount of drugs needed by Patillo's friend, coupled with the evidence that in this conversation Ella Norman quoted Patillo a price for a kilo of cocaine, was sufficient to allow an inference that an agreement was reached between them to accomplish the unlawful act of sale or delivery of cocaine. The amount agreed upon, a kilo, one thousand grams, was sufficient to establish a conspiracy to violate N.C. Gen. Stat. § 90-95(h)(3)(c) (1981 Replacement), 400 grams or more. This assignment is overruled.

[2] In another assignment of error, defendant contends that the trial court erred in allowing the State to introduce Patillo's out-of-court statements made to his attorney respecting his negotiations with Ella Norman, ostensibly to corroborate his in-court testimony. The general rule in this state is that prior consistent state-

ments of a witness may be offered to corroborate the trial testimony of a witness. *See* 1 Brandis, *N.C. Evidence*, §§ 50-52 (2d rev. ed. 1982) and cases cited and discussed therein. We have found few cases in which our appellate courts have found the admission of such evidence to be prejudicial error; nevertheless, we find that the statements of the witness Patillo were at points substantially inconsistent with his trial testimony and, at other points, so substantially at variance with his trial testimony as to render them inadmissible. Our careful examination of these out-of-court statements indicates that Patillo told a far different story to his lawyers than he was either willing to tell or actually told at trial. In this conspiracy trial, where the trial testimony of an actual agreement to sell or deliver cocaine was merely adequate to overcome a motion to dismiss, these out-of-court statements were especially damaging and clearly prejudicial, and it was error to admit them.

[3] In another assignment, defendant contends that the trial court erred in allowing Officer Kirkman to testify that Patillo's post-arrest, pre-trial statements to Kirkman were consistent with Patillo's trial testimony. The questions and answers were as follows:

Q. And he told you during those conversations essentially what he testified to here today?

MR. MORROW: Objection.

COURT: Overruled. Now, ladies and gentlemen, what Patillo told this officer since that time you may consider only for the purpose of corroborating Patillo's testimony under oath here at this trial if in fact you find it does corroborate his testimony. Not substantive evidence, what he told the officer.

Q. The question is the discussions you have had with him, did what he told you then, was it in essential agreement with what he testified to here during this trial?

MR. MORROW: Objection for the record.

A. Yes, sir.

COURT: Overruled.

We find defendant's exception to have merit. Witness Kirkman was not asked to relate to the jury what Patillo had said to him, only to give his opinion as to whether whatever was said by Patillo before trial was "essentially what he testified to." In our opinion, this carries the liberality of the consistent statement rule too far. At the least, Officer Kirkman should have been put to the test of recalling for the jury what Patillo had told him before trial before giving his opinion as to whether Patillo had been consistent in his pre-trial statements and trial testimony.

[4] In another assignment, defendant contends that the trial court erred in allowing Patillo to testify that he had previously purchased drugs from friends who told him that the drugs came from Ella Norman. Not only was this hearsay testimony, but its use in this conspiracy trial was only relevant to show Ella Norman's bad character or disposition to commit the offense for which she was being tried, and this was error. *See State v. Alley*, 54 N.C. App. 647, 284 S.E. 2d 215 (1981).

In another assignment, defendant contends that the trial court erred in commenting to the jury that he would see to it that the State's witness Patillo, a co-conspirator, would not get the full benefits of his plea bargain. We have carefully considered this assignment of error, and while we find that it is not without merit, we conclude that it is not likely to recur upon re-trial and therefore decline to rule on it.

[5] In another assignment, defendant contends that the trial court erred in not declaring a mistrial where Officer Kirkman "volunteered" testimony that he could not work in Yadkin County because Patillo had told him his (Patillo's) "friend" was a member of Hell's Angels. The trial court sustained defendant's objections and instructed the jury not to consider it. This instruction cured this error, one which we assume will not recur upon a new trial. *See State v. Black*, 305 N.C. 614, 290 S.E. 2d 669 (1982). This assignment is overruled.

## II. *Defendant Charles Terry Norman's Appeal*

[6] In one of his assignments of error, defendant Terry Norman contends the trial court erred in denying his motion to dismiss for insufficiency of the evidence. We disagree. In ruling upon a motion to dismiss, the trial court must consider all the evidence ad-

mitted, both competent and incompetent, in the light most favorable to the State. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). Our careful review of the trial testimony of the witness Patillo, plus Patillo's out-of-court statements, provided substantial evidence that Terry Norman entered into and became a part of the conspiracy between Ella Norman and James Michael Patillo to sell or deliver one kilo of cocaine. This assignment is overruled.

In other assignments of error, defendant Terry Norman has raised issues presented in the appeal of Ella Norman. Our disposition of those issues in Ella Norman's appeal entitles Terry Norman to a new trial.

For the reasons stated, both defendants must have a new trial.

New trial.

Judges WHICHARD and PHILLIPS concur.