STATE OF NORTH CAROLINA v. GARY LEE WEATHERS

No. 253A87

(Filed 6 April 1988)

**1. Rape and Allied Offenses § 5— sexual offense—cunnilingus—sufficient evidence**

  Testimony by the nine-year-old victim that defendant "had his tongue— not in [her] vagina, but he was going around it" constituted sufficient evidence of cunnilingus to support a conviction for a first degree sexual offense.

**2. Criminal Law § 88.4— cross-examination of defendant—failure to appear— knowledge of order for arrest**

  Where defendant testified at some length about his absence from the state for two years while rape, incest and sexual offense charges were pending against him, defendant opened the door to cross-examination about whether he knew that an order for his arrest had been issued. Moreover, the prosecutor's questions did not amount to asking defendant if he had been accused or charged with some other offense since the order issued for defendant's arrest was for his failure to appear for trial on the charges for which he was presently being tried, and the prosecutor's questions related to those crimes.

BEFORE *Owens, J.*, and a jury at the 5 January 1987 Criminal Session of Superior Court, MECKLENBURG County, defendant was convicted of two counts of incest, two counts of first-degree rape and one count of first-degree sexual offense. Judgment was entered on 7 January 1987 sentencing defendant to three terms of life imprisonment for the two counts of first-degree rape and the one count of first-degree sexual offense, of which the first two terms were to run consecutively and the third concurrently with the first. In addition, defendant was sentenced to a total of nine years for the two counts of incest, to run concurrently with the first life sentence. Defendant appeals pursuant to N.C.G.S. § 7A-27(a). Decided on the briefs pursuant to N.C.R. App. P. 30(d).

*Lacy H. Thornburg, Attorney General, by James Peeler Smith, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Leland Q. Towns, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Defendant was convicted of the crimes of incest, rape and sexual offense, all of which he perpetrated upon his young daughter (hereinafter referred to as the victim so as not to disclose her name on the record). On appeal, he argues that the evidence relating to the charge of first-degree sexual offense was insufficient, and that he was improperly cross-examined about his failure to appear in court when his case was first called for trial. We find no error.

The State's evidence tended to show the following events. The victim lived with her mother and sister in Charlotte, North Carolina. Defendant, who is the victim's father, lived with several relatives, including the victim's aunt and cousin, in another part of town. The victim frequently visited defendant at her aunt's house. When she spent the night there, she slept with her aunt and cousin. Her father had a separate bedroom.

In the summer of 1983, when the victim was nine years old, she made a two-week visit to her aunt's house. During this visit, three sexual incidents occurred. On the first occasion, defendant took the victim from her aunt's bedroom to the living room, where he placed her on the couch and inserted his penis into her vagina. The second time, he took the victim to his own bed where he once again inserted his penis into her vagina. On the third occasion, defendant took the victim to the living room, where he rubbed his tongue around her vagina. After each incident, the victim returned to her aunt's bedroom, locking the door. At this time, she told nobody about what had happened because she was frightened and ashamed and thought it was her fault.

In January 1984 the victim revealed the incidents to her school guidance counselor. Several days later, in the presence of the counselor, the victim told her mother of the incidents. She subsequently described the incidents to personnel at the Department of Social Services and the Youth Bureau of the Charlotte Police Department.

At trial, defendant took the stand and denied having had any sexual relations with his daughter. His sister and niece, with whom the victim slept, testified that they were both unaware of defendant's entries into the bedroom. The victim had never said anything to either of them about the sexual incidents. Defendant had never made any sexual advances towards his niece, even though she was often left with him.

[1] Defendant first contends that the State failed to produce substantial evidence showing that he engaged in a sexual act with the victim. Specifically, he argues that insufficient evidence of cunnilingus existed, because the State failed to show that he in fact touched the victim's vagina with his tongue.

We find *State v. Ludlum*, 303 N.C. 666, 281 S.E. 2d 159 (1981), to be dispositive of this issue. There, the question presented was whether testimony by a four-year-old girl that defendant had touched her with his tongue between her legs, while indicating the place of touching to the jury, constituted sufficient evidence of cunnilingus to support a conviction for a first-degree sexual offense. After reviewing the dictionary definitions of cunnilingus and the medical definitions of the external genital organs of the female, this Court stated:

> We are satisfied the Legislature did not intend that the vulva in its entirety or the clitoris specifically must be stimulated in order for cunnilingus to occur. To adopt this view would saddle the criminal law with hypertechnical distinctions and the prosecution with overly complex and in some cases impossible burdens of proof. We think, rather, that given the possible interpretations of the word as ordinarily used, the Legislature intended to adopt that usage which would avoid these difficulties. We conclude, therefore, that the Legislature intended by its use of the word cunnilingus to mean stimulation by the tongue or lips of *any part of a woman's genitalia.*
>
> . . . .
>
> . . . The degradation to the person of . . . a small girl incapable of consenting is complete in the case of cunnilingus once the perpetrator's lips or tongue have touched *any* part of her genitalia whether or not any actual "penetration" of the genitalia takes place.

.  .  .  .

. . . Whatever "stimulation" is required is accomplished for purposes of Article 7A prosecutions when there has been the slightest touching by the lips or tongue of another to *any* part of the woman's genitalia.

*Ludlum*, 303 N.C. at 672, 673-74, 281 S.E. 2d at 162, 163 (emphasis added). In the case *sub judice*, the victim's testimony that defendant "had his tongue — not in [her] vagina, but he was going around it" was sufficient to establish that defendant placed his tongue on her *mons pubis*, which is a part of the external female genitalia. *Id.* The act of cunnilingus was thus complete. Defendant's argument is without merit.

[2] Defendant next complains that he was unfairly prejudiced by the following questions asked of him during cross-examination.

Q. Isn't it a fact and isn't it true, Mr. Weathers, that you — well, STRIKE THAT. Isn't it true, Mr. Weathers, that when these same five cases were called for trial the week of September the 10th, 1984, you were called and failed and there was an Order issued for your arrest for that failure to appear? Isn't that true, sir?

MR. GRONQUIST: OBJECTION. How would he know if he was called.

THE COURT: OBJECTION OVERRULED.

He can say whether he knows or not.

A. No, sir, I didn't know.

Q. You know that now, though, don't you?

A. Yes, sir.

Q. And isn't it true, Mr. Weathers, that that Order for Arrest for your failure to appear that week was only served upon you the week of September the 10th, 1986? Isn't that true?

A. Of this year?

Q. Yes, sir, 1986.

A. Yes, sir.

Defendant contends that this exchange was improper because it exceeded the bounds of proper cross-examination and it amounted to asking him if he had been accused or charged with some other offense. We find no merit in this contention.

On direct examination defendant testified about his two-year disappearance from Mecklenburg County, North Carolina. He testified that he was arrested there in January 1984 on the charges for which he was presently being tried. Some time before Christmas of that year he was employed with a trucking company, unloading trucks. He went to Virginia to unload a truck, but because the company had no return shipment to North Carolina, he remained in Virginia even though he knew he was under indictment in North Carolina. He worked in Virginia and then went to Maryland where he also found employment. He subsequently returned to Marion, North Carolina, where he was arrested for drunken driving, for which he was convicted and placed on two years' probation. Defendant told his probation officer that a warrant on him might be outstanding. He eventually returned to Charlotte, North Carolina in 1986. On cross-examination defendant acknowledged that during the period he was out-of-state, he was represented by a Charlotte attorney. Although he had the attorney's telephone number, he did not keep her advised of his whereabouts. Defendant was then asked the questions about which he now complains.

We conclude that defendant was not prejudiced by the district attorney's cross-examination because he "opened the door" to the questions. Even though defendant's testimony on direct examination as to his out-of-state activities may have been given in an effort to forestall the State's possible contention that his absence amounted to flight to avoid prosecution, we have said that "when a defendant in a criminal case offers evidence which raises an inference favorable to his case, the State has the right to explore, explain or rebut that evidence. *State v. Albert*, 303 N.C. 173, 277 S.E. 2d 439 (1981)." *State v. Brown*, 310 N.C. 563, 571, 313 S.E. 2d 585, 590 (1984). *See also State v. Gappins*, 320 N.C. 64, 357 S.E. 2d 654 (1987) (a defendant may not deliberately elicit testimony and then later complain of its admission). Defendant had testified at some length about his absence from the county for two years while charges were pending against him. Defendant having thus opened the door, the district attorney could

properly delve further into defendant's knowledge, if such he had, of any measures taken to secure his attendance at trial.

Defendant's contention that the district attorney's questions showed that defendant had been accused or charged with another offense is similarly unpersuasive. Defendant draws our attention to *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971), wherein we stated that a defendant in a criminal case may not be cross-examined as to whether he has been indicted or is under indictment for a criminal offense other than that for which he is then on trial. Defendant overlooks the fact that here the prosecutor's questions related to the offenses for which defendant was presently being tried. The order issued for defendant's arrest was for his failure to appear for trial on *these* crimes. Moreover, defendant himself had testified on direct that he knew he was under indictment and thought that a warrant for his arrest might be outstanding. We fail to see how defendant could have been prejudiced by a question asking him if he knew that an order for his arrest had actually been issued. Defendant's arguments as to his cross-examination are without merit.

We hold that defendant received a fair trial, free of prejudicial error.

No error.