STATE OF NORTH CAROLINA v. RONNIE LANE STANCIL

No. COA00-581

(Filed 18 September 2001)

**1. Evidence— expert testimony—sexual assault—credibility**

The trial court did not commit plain error in a first-degree sexual offense case by allowing the State's expert witnesses to state opinions about whether the seven-year-old child victim had been sexually assaulted and about the child's credibility, because: (1) a physical exam was given within hours after the incident and interview, and the nature of the sex act was not likely to leave forensic evidence particularly after the child used the bathroom; (2) the child was consistent in relating facts during each interview and exhibited physical symptoms of trauma; (3) the expert testimony was based on the overall examination of the child dur-

ing the course of treatment rather than solely on the child's state-ments; and (4) each opinion was given by an expert in the field of child abuse or child investigation and interviews who had observed the child, noted her symptoms and manifestations, con-ducted at least one interview with her, and was aware of her account of the incidents to others.

## 2. Evidence— testimony—sexual assault—child's allegations did not vary—prior consistent statements—corroboration

The trial court did not err in a first-degree sexual offense case by allowing the State's witnesses to testify that the seven-year-old child victim's allegations did not vary, because: (1) the witnesses first related to the jury what the victim had told them and then testified that she had not changed her story; and (2) the child's prior consistent statements are admissible to corroborate the testimony of the witnesses.

## 3. Evidence— hearsay—medical diagnosis or treatment exception

The trial court did not err in a first-degree sexual offense case by allegedly allowing hearsay statements of the seven-year-old child victim because the interviews occurred in the hos-pital almost immediately after the incident, showing that the vic-tim made the statements for purposes of medical diagnosis and treatment.

## 4. Evidence— lay witness—observations of child sexual assault victim—relevancy

The trial court did not err in a first-degree sexual offense case by allowing a lay witness to testify regarding her personal obser-vations of the seven-year-old child victim, because: (1) the wit-ness testified as to her observations of the child when she was in her presence before and after the assault, and she did not testify about the child's character; and (2) observations by a lay witness as to the behavior of an alleged victim before and after an inci-dent are relevant as to whether the incident occurred.

## 5. Evidence— testimony—post-traumatic stress disorder— sexual assault—general behavioral and psychological characteristics

The trial court did not err in a first-degree sexual offense case by allegedly allowing testimony regarding post-traumatic stress disorder without giving a limiting instruction, because the State's

expert witnesses did not testify that the child victim was suffering from post-traumatic stress syndrome but merely testified as to the general behavioral and psychological characteristics of sexually abused children and described their personal observations of the child.

**6. Evidence— testimony—sexual abuse—no physical findings—lifelong problems of victim—victim developed fear of men**

The trial court did not err in a first-degree sexual offense case by allowing testimony that sixty to eighty percent of similar sexual abuse cases do not have any physical findings, that seventy percent of children who are sexually abused have lifelong problems, and that the victim apparently developed a fear of men, because: (1) the testimony concerning the percentages was based on the experts' knowledge and experience in the area of child sexual abuse; and (2) the testimony about the victim's fear of men was based on the witness's personal observations.

**7. Sexual Offenses— first-degree—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree sexual offense under N.C.G.S. § 14-27.4(a)(1) at the close of all evidence, because our courts have consistently held that an alleged victim's testimony is sufficient to establish that the accused committed a completed act of cunnilingus by placing his tongue on her pubic area.

Judge BIGGS dissenting.

Appeal by defendant from judgment entered 16 September 1999 by Judge Dennis J. Winner in Cabarrus County Superior Court. Heard in the Court of Appeals 19 April 2001.

*Attorney General Michael F. Easley by Special Deputy Attorney General Lorinzo L. Joyner & Assistant Attorney General Anne M. Middleton for the State.*

*Grace & Clifton by Michael A. Grace & Christopher R. Clifton for defendant-appellant.*

STATE v. STANCIL

[146 N.C. App. 234 (2001)]

THOMAS, Judge.

Defendant, Ronnie Lane Stancil, was found guilty in a jury trial of first-degree sexual offense. He was sentenced to a minimum of 192 months and a maximum of 240 months in prison. From this conviction and sentence, defendant appeals and sets forth eight assignments of error.

The State's evidence tended to show the following: The child, a seven year-old female, went to a friend's home to play with her on 4 June 1998. Defendant, the friend's uncle, was the only one there at the time. The child had met defendant during earlier visits and, following his invitation, went inside to await her friend's return. She colored in a book and eventually, after going outside with defendant several times and returning, began falling asleep on the couch. She then felt something "wet and yucky." The child looked down and saw defendant licking her "privacy," which she identified as her vaginal area. She told defendant she had to leave and he responded by saying "you're not going to tell anybody, are you?" She crossed her fingers behind her back, agreed not to tell and ran home. She immediately told her father what defendant had done to her.

The child's father referred to her as being hysterical, crying and shaking badly as she told him about the incident. As soon as she finished describing the event, he telephoned the police.

When Concord Police Officer Audrey Bridges (Bridges) arrived at their home, the child was sitting on a couch sobbing. After calming down, the child told Bridges she went to a friend's house to play but her friend was not there; that a man was there and told her she could wait; while she was inside the house, the man pulled up her shirt and licked her on the chest; and that he pulled her panties to the side and licked her "spot." When asked what her "spot" was, she pointed to her vagina.

Officer Brandon Eggleston (Eggleston) instructed the family not to change the child's clothes until after she was examined at the hospital and not to allow her to use the bathroom because of the possibility of wiping away evidence of the assault. Nevertheless, the child did use the bathroom prior to an examination.

After she was interviewed by the police, the child's parents took her to Northeast Medical Center for treatment. She was interviewed by Chris Ragsdale (Ragsdale), a psychologist with the Child Advocacy Center located in the hospital; Dr. Henant Prakash (Prakash), a pedi-

atrician who also performed a physical examination on the child; and Donna Ezzell (Ezzell), a certified sexual assault nurse. Ragsdale was qualified at trial, without objection, as an expert in child investigation and interviews. Prakash was qualified at trial, without objection, as an expert in pediatric medicine specializing in child abuse.

According to Ragsdale, the child related facts consistent with what she had told police and her father. She exhibited "a great deal of anxiety," compressed speech and hand-wringing throughout the interview. Based on his observations of the child, his interview with her and the consistency of her account to others, Ragsdale opined that it was all "consistent with exposure to child maltreatment."

According to Prakash, the child related essentially the same facts to her that she had previously told her parents, the police, Ragsdale and Ezzell. Prakash noted that the child was "very intelligent, very articulate." The physical examination itself revealed no abnormalities. However, Prakash testified that in sixty to eighty percent of cases with similar facts, the physical examinations were normal. She added that, in her opinion, the child's history, demeanor, and exam were consistent with sexual abuse.

Five days after first examining her, Prakash saw the child again, this time for abdominal pains and headaches. No physical causes were found. Prakash attributed the symptoms to anxiety from the June 4th events. When asked if they were symptoms of "someone who had been abused," she responded, "Yes, it can be."

Prakash's overall conclusion was that the child "was sexually assaulted and [that there was] maltreatment, emotionally, physically and sexually."

Officer Eggleston, meanwhile, had collected the rape kit from the hospital, the clothing the child had been wearing, a pair of sunglasses and a Yak-Bak toy she had taken to her friend's home. The items were sent to the State Bureau of Investigation laboratory for analysis but the test results were inconclusive.

Defendant's evidence tended to show the following: Kathy Pressley, defendant's·sister, testified the Pressleys had a standing rule that no other children were allowed to visit there unless the Pressley parents were present. She said the child had previously violated the rule and would sometimes come to their home and try to force herself in. She also related that six months prior to this incident, the child had a temper tantrum during a birthday party there.

Robin Fuller also testified regarding the child's temper tantrum at the birthday party. William Carter testified about the child wandering the neighborhood during daytime hours.

Defendant did not testify.

[1] By his first and second assignments of error, defendant argues the trial court erred in allowing expert witnesses for the State to testify about: (1) whether the child had been sexually assaulted; and (2) the credibility of the child.

Defendant did not object at trial to the questions which resulted in Ragsdale saying the child's anxiety, compressed speech, hand-wringing, the interview itself and the consistency of the child's account to others all were "consistent with exposure to child maltreatment." Likewise, there was no objection when questions were asked on direct examination which led to Prakash saying the child's history, demeanor and exam were consistent with sexual abuse and then saying the child "was sexually assaulted and [that there was] also maltreatment, emotionally, physically and sexually."

We note that in these assignments of error, defendant fails to properly present the issues pursuant to Rule 10 of the North Carolina Rules of Appellate Procedure. N.C.R. App. P. 10. Specifically, defendant argues plain error in his brief, yet neglects to assert plain error as a basis for appeal in the corresponding assignments of error. He is therefore deemed to have waived his right for this Court to conduct a plain error review. *State v. Truesdale*, 340 N.C. 229, 456 S.E.2d 299 (1995). However, under Rule 2, this Court exercises its discretionary power to review defendant's appeal on the merits, pursuant to a "plain error" standard of review. N.C.R. App. P. 2.

Our Supreme Court has held a doctor's opinion is properly excluded if it is based on speculation or conjecture, without adequate underpinning. *State v. Clark*, 324 N.C. 146, 377 S.E.2d 54 (1989). Nonetheless, Rule 704 states that "[t]estimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." N.C. R. Evid. 704. This Court held an expert opinion to be admissible as to whether a child had been abused in *State v. Bailey*, 89 N.C. App. 212, 365 S.E.2d 651 (1988), where the opinion testimony of a social worker and pediatrician was based upon each witness's examination of the victim and expert knowledge concerning the abuse of children. *See also State v. Figured*, 116 N.C. App. 1, 446 S.E. 2d 838 (1994), *rev. denied*, 339 N.C. 617, 454 S.E.2d 261 (1995).

STATE v. STANCIL

[146 N.C. App. 234 (2001)]

Notwithstanding these cases, this Court held in *State v. Grover*, 142 N.C. App. 411, 543 S.E.2d 179, *rev. allowed*, 353 N.C. 454, 548 S.E.2d 164 (2001), that in the absence of physical evidence of abuse, an expert cannot base his conclusions *solely* on the children's statements that they had been abused. In *Grover*, the physical exam was given more than a month after the alleged incident and after an interview with a social worker. The nature of the alleged abuse (anal and vaginal penetration) was such that physical findings were likely. There were no clinical findings of anxiety, depression, anger or fear.

The facts in *Grover* are distinguishable from those in the instant case. Here, the physical exam was given within hours after the incident and interview, the nature of the sexual act (cunnilingus) was not likely to leave forensic evidence, particularly after the child used the bathroom. The child not only was consistent in relating facts during each interview but also exhibited physical symptoms of trauma such as compressed speech, hand-wringing, shaking, nervousness and anxiety. The expert testimony in the instant case was based on the overall examination of the child during the course of treatment, rather than solely on the statements. Each opinion was given by an expert in the field of child abuse or child investigation and interviews who had observed the child, noted her symptoms and manifestations, conducted at least one interview with her (and, as to Prakash, conducted two physical exams) and was aware of her account of the incident to others. Thus, the testimony at issue was not based *solely* on the child's statements.

Additionally, we note plain error is error so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached. *State v. Parker*, 350 N.C. 411, 516 S.E.2d 106 (1999). In the instant case, the jury had before it: (1) the testimony of the child; (2) evidence of her intense and immediate emotional trauma after the incident; (3) the consistency of her accounts; (4) her demeanor and physical manifestations during the interviews and first physical exam; (5) evidence of her symptoms and exam by Prakash five days later; and (6) the conclusions of two experts that her actions and statements were consistent with child maltreatment or abuse. There was overwhelming evidence against defendant. Moreover, the only evidence defendant presented in contravention went strictly to the credibility of the child and her behavior in the neighborhood, not the facts of the incident. Defendant has not shown any fundamental error

that resulted in a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached. Accordingly, we reject these assignments of error.

[2] By his third assignment of error, defendant argues the trial court erred by allowing witnesses for the State to testify that the victim's allegations did not vary. Again, we disagree.

Defendant cites *State v. Norman*, 76 N.C. App. 623, 334 S.E.2d 247, *rev. denied*, 315 N.C. 188, 337 S.E.2d 863 (1985), to argue expert testimony offered to bolster the victim's credibility was error. In *Norman*, this Court found prejudicial error because the police officer was not asked to relate to the jury what the victim told him before being asked whether the statements were consistent with the victim's trial testimony. By contrast, in the instant case, the witnesses first related to the jury what the victim told them and then testified that she had not changed her story. This Court held in *State v. Stallings* that:

> Prior consistent statements of a witness are admissible to corroborate the testimony of that witness if the statements in fact corroborate the testimony. *State v. Holden*, 321 N.C. 125, 143, 362 S.E.2d 513, 526 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). "The fact that a witness made a prior consistent statement is admissible as evidence tending to strengthen the witness' credibility." *State v. Cox*, 303 N.C. 75, 83, 277 S.E.2d 376, 381 (1981). Prior consistent statements are admissible even when there has been no impeachment. *State v. Martin*, 309 N.C. 465, 476, 308 S.E.2d 277, 284 (1983).

*State v. Stallings*, 107 N.C. App. 241, 247, 419 S.E.2d 586, 590 (1992), *rev. improv. allowed*, 333 N.C. 784, 429 S.E.2d 717 (1993). We find that the child's prior consistent statements are therefore admissible and reject this assignment of error.

[3] By his fourth assignment of error, defendant contends the trial court allowed hearsay statements of the victim not made for the purpose of medical diagnosis or treatment.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. R. Evid. 801(c). Hearsay statements are inadmissible at trial unless allowed by statute or an applicable exception. N.C. R. Evid. 802. Under the North Carolina Rules of Evidence, statements for the purposes of medical

diagnosis fall within an exception to the hearsay rule. N.C. R. Evid. 803(4). These include "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *Id.*

Our Supreme Court in *State v. Hinnant*, 351 N.C. 277, 523 S.E.2d 663 (2000), set forth a two-prong test for testimony to be admitted under this rule. First, the trial court must determine whether the declarant intended to make the statements to obtain medical diagnosis or treatment. Second, the trial court must determine whether the declarant's statements were reasonably pertinent to medical diagnosis or treatment. Defendant contends there was insufficient evidence of the child's motive in making the statements and insufficient evidence the child comprehended the interview was for the purpose of providing medical treatment. We disagree.

In the instant case, the interviews complained of occurred in the hospital almost immediately after the incident. The child had run home and told her father about the assault. The father quickly called police. Within hours and while still emotionally upset, she was taken to the hospital. While at the hospital, the child was interviewed by a social worker, a nurse and a physician in order to determine the child's diagnosis. Moreover, the child testified at trial that she went to the hospital because defendant "hurt her privacy." The child then returned to see Prakash five days later due to abdominal pain and headaches.

These facts are analogous to those of *In re Clapp*, 137 N.C. App. 14, 526 S.E.2d 689 (2000), where the defendant made the child disrobe and licked her privates. Immediately after the incident, the child in *Clapp* told her mother, who at once called police and took her to the hospital. The child told the examining physician the same facts. The *Clapp* Court held that the statements to the child's mother and physician were admissible under the medical diagnosis and treatment exception of Rule 803(4). Likewise, in the instant case, the evidence presented at trial is sufficient to support the trial court's conclusion that the victim made the statements for purposes of medical diagnosis and treatment. Accordingly, we reject this assignment of error.

**[4]** By his fifth assignment of error, defendant argues the trial court erred by allowing a lay witness to testify regarding her personal observations of the child. We disagree.

Tessie Hendricks (Hendricks), a family friend, testified the child had "always been a wonderful child" and "got along well with everybody up until just here, when this happened." Defendant contends this was impermissible general character evidence under N.C. Gen. Stat. § 8C-1, Rule 404(b).

Such testimony is admissible so long as it satisfies the test of relevancy in Rules 401 and 402 of the North Carolina Rules of Evidence. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. R. Evid. 401. The witness merely testified as to her observations of the child when she was in her presence before and after the assault. She did not testify about the child's character. Observations by a lay witness as to the behavior of an alleged victim before and after an incident are relevant as to whether the incident occurred. Defendant cites no authority for the exclusion of such evidence. Thus, we reject defendant's fifth assignment of error.

**[5]** By his sixth assignment of error, defendant argues the trial court erred in allowing testimony regarding post-traumatic stress disorder without giving a limiting instruction. We disagree.

Defendant cites *State v. Hall*, 330 N.C. 808, 412 S.E.2d 883 (1992) in support of his position. In *Hall*, our Supreme Court addressed the admissibility of expert testimony that the prosecuting witness was suffering from post-traumatic stress syndrome. The *Hall* Court held, in part, that where an expert testifies the victim is suffering from post-traumatic stress syndrome, the testimony must be limited to corroboration of the victim. However, *Hall* is not applicable here since no witness testified the child was suffering from post-traumatic stress syndrome. Further, this Court, in *State v. Richardson*, 112 N.C. App. 58, 434 S.E.2d 657 (1993), *rev. denied*, 335 N.C. 563, 441 S.E.2d 132 (1994), held that expert testimony regarding the nature of child sexual abuse, the general characteristics of sexually abused children and the psychological symptoms of being molested did not constitute evidence of post-traumatic stress disorder.

In the instant case, defendant improperly characterizes the testimony of Ragsdale and Prakash as opinion evidence that the victim suffered from post-traumatic stress syndrome. The witnesses merely testified as to the general behavioral and psychological characteristics of sexually abused children and described their

personal observations of the child. As such, their testimony was admissible without a limiting instruction and we reject this assignment of error.

**[6]** By his seventh assignment of error, defendant argues the trial court erred by allowing irrelevant and prejudicial testimony. We disagree.

Again, relevant evidence is any evidence having a tendency to make the existence of any fact in controversy more probable than it would be without the evidence. N.C. R. Evid. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. R. Evid. 403.

Defendant cites as examples of such improper evidence: (1) testimony from Prakash that sixty to eighty percent of similar sexual abuse cases do not have any physical findings; (2) Ragsdale's testimony that seventy percent of children who are sexually abused have lifelong problems; and (3) Hendricks's testimony that the victim had apparently developed a fear of men.

The examples cited by defendant were both relevant and admissible. The testimony of Prakash and Ragsdale was based on their knowledge and experience in the area of child sexual abuse. The testimony of Hendricks was based on her personal observations. There was no danger of the concerns set forth in Rule 403, such that the evidence should have been excluded. Accordingly, this assignment of error is rejected.

**[7]** By his eighth and final assignment of error, defendant argues the trial court erred in denying his motion to dismiss at the close of all the evidence. We disagree.

In reviewing a motion to dismiss, "the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

Defendant was convicted of first-degree sexual offense under N.C. Gen. Stat. § 14-27.4(a)(1), the elements of which are: (1) engaging in a sexual act; (2) with a child under the age of thirteen; (3) the defendant at least age twelve; and (4) the defendant at least four years older than the victim. *See* N.C. Gen. Stat. § 14-27.4(a)(1) (1999).

Defendant challenges only the sufficiency of the evidence as to the sexual act. The State presented evidence that defendant licked the child's "privacy." By use of an anatomical doll, she identified her privacy as her vaginal area. Medical evidence is not required to support a conviction of first-degree sexual offense. *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985). Our courts have consistently held an alleged victim's testimony is sufficient to establish that the accused committed a completed act of cunnilingus by placing his tongue on her pubic area. *See State v. Weathers*, 322 N.C. 97, 366 S.E.2d 471 (1988); *State v. Ludlum*, 303 N.C. 666, 281 S.E.2d 159 (1981). The State presented substantial evidence of each element of the offense charged. Accordingly, this assignment of error is rejected.

NO ERROR.

Judge MARTIN concurs.

Judge Biggs dissents.

BIGGS, Judge Dissenting.

I respectfully dissent from the majority's finding of no error by the trial court. It was error to permit Dr. Prakash to testify, without a proper foundation, that the child "was sexually assaulted and [that there was] also maltreatment, emotionally, physically and sexually." Moreover, on the facts of this case, the testimony was sufficiently prejudicial to constitute plain error, entitling defendant to a new trial.

A qualified expert may testify, like any other witness, to his or her own observations. *State v. Wade*, 296 N.C. 454, 251 S.E.2d 407 (1979). Further, a medical expert offering testimony in a case involving sexual abuse may testify as to whether these observations are "consistent with" sexual abuse. *State v. Aguallo*, 322 N.C. 818, 370 S.E.2d 676 (1988) (holding that doctor's testimony that physical examination was 'consistent with' victim's earlier statements is "vastly different

from" comments on victim's credibility); *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987). However, it is well settled that an expert may not testify that a child "<u>was</u> sexually abused" if the expert's conclusion is based solely on the child's account of events. *State v. Parker*, 350 N.C. 411, 516 S.E.2d 106 (1999); *State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 (1987); *State v. Dick*, 126 N.C. App. 312, 485 S.E.2d 88, *disc. review denied*, 346 N.C. 551, 488 S.E.2d 813 (1997). Before an expert may testify unequivocally that abuse <u>did</u> occur, "[t]he State [is] required to lay a sufficient foundation to show that the opinion expressed by [the expert] was really based upon [the expert's] special expertise, or stated differently, that [the expert] was in a better position than the jury to have an opinion on the subject." *State v. Trent*, 320 N.C. 610, 614, 359 S.E.2d 463, 465. Absent this foundation, the expert's testimony is reduced to a validation of the honesty of the child; such testimony is inadmissible as an improper comment on a witness's credibility.

The testimony offered by the State in this case is similar to testimony offered in *State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 and *State v. Parker*, 111 N.C. App. 359, 432 S.E.2d 705, in which the Court found the opinions inadmissible because the State failed to lay sufficient foundation. A proper foundation must include information other than the child's statements; such evidence may be emotional, *see State v. Youngs*, 141 N.C. App. 220, 540 S.E.2d 794 (2000) (psychologist who treated victim for psychological disorders properly permitted to state that in her opinion child had been abused), or physical, *see State v. Dick*, 126 N.C. App. 312, 485 S.E.2d 88, (abnormality of child's hymen supported her statements to doctor).

In the instant case, Dr. Prakash testified that she had reviewed an interview between the child and a social worker, Mr. Ragsdale, in which the child repeated her account of the alleged incident, and had conducted a thorough physical examination. Prakash then testified as follows:

Q: Was Stephanie's history and demeanor consistent with some of the other patients you've seen?

A: Well, every case is different. Every history is different.

Q: Stephanie was, did she become tearful or cry or—

A: She was scared, she was scared.

Q: <u>Again, was that unusual or anything different from what you normally see with a child?</u>

A: No. I would be scared too to get examination done at eight years of age.

Q: Would you say that Stephanie's history, demeanor and exam was consistent with sexual abuse?

A: Yes.

Q: And why do you say that?

A: Because of this history that I took from her and because of physical examination, too, that is consistent with the history.

Q: You mean she did not allege something where you would expect to find something; is that correct? She didn't allege a penetration then you don't find it.

A: I don't find it.

Q: Dr. Prakash, after discussing the medical history that you received from Mr. Ragsdale and then examining Stephanie, did you reach a medical conclusion?

A: Yes I did.

Q: And what was that conclusion?

A: She was sexually assaulted and also maltreatment, emotionally, physically and sexually.

(emphasis added)

Dr. Prakash's opinion testimony lacked any real basis beyond her belief in the child's credibility. On cross-examination, Dr. Prakash testified that the lack of physical findings was consistent with either abuse or with the absence of any abuse. Prakash testified that the child's demeanor during the examination was essentially normal. The physical examination did not reveal any supporting findings. The child made only one additional visit to Dr. Prakash, for treatment of headaches and abdominal pain. No psychological tests were administered; nor was the child-witness being treated for any ongoing physical or emotional disorders. In sum, the doctor's testimony that sexual abuse had occurred, "vastly different from" more appropriate testimony about the consistency of her findings with other evidence, lacked a proper foundation and should not have been admitted.

Further, on the facts of this case, the admission of this testimony constituted plain error. There were no witnesses to the alleged inci-

dent other than the child and the defendant. No other witnesses testified to any inappropriate behavior by defendant. No physical injuries were inflicted, and no physical corroboration was presented. Most of the witnesses were "interested;" e.g., the child, her family, and the defendant's sister. The evidence provided little basis, other than the child's testimony, for the jury to determine whether the defendant had committed the charged offense. Against this backdrop, Dr. Prakash's unequivocal and dramatic testimony that the child "was sexually assaulted and also maltreatment, emotionally, physically and sexually" likely "tipped the scales" and determined the outcome of the trial. While there are few more serious crimes than sexual abuse of a child, we must be careful not to disregard the rights of one to protect the rights of another.

The defendant is entitled to a new trial.